UNITED STATES ex rel. ULMER v.
PHILLIPS, Immigrant Inspector.

No. 1436.

District Court, D. Montana.

April 14, 1938.

A. F. Lamey, of Havre, Mont., for relator.

John B. Tansil, U. S. Atty., of Billings, Mont., for respondent.

PRAY, District Judge.

A hearing was held in the above entitled cause on the application, order to show cause, return thereto by John A. Phillips, Immigrant Inspector, respondent, and traverse by applicant and relator.

On the 21st of September, 1937, a Warrant of Deportation was issued by the Assistant to the Secretary of Labor for the return to Canada of the relator herein. The essential parts of the Warrant are that relator entered the United States at Havre, Montana, about the 30th day of March, 1932, and was found therein in violation of the immigration laws thereof, and is subject to deportation under section 19 of the Immigration Act of February 5, 1917, 8 U.S.C.A. § 155, and pursuant to the Immigration Act of 1924, in that at the time of his entry he was not in possession of an unexpired immigration visa. The Warrant of Deportation was issued following a hearing accorded the relator by the immigration authorities.

Relator claims that he is a citizen of the United States by virtue of the naturalization of his father and mother while he was a minor and is therefore not subject to deportation.

One contention of the government is that the records fail to disclose payment of head tax by Peter Ulmer, father of relator, when he entered with his family, consisting of his wife, two sons and a daughter on May 20, 1917, and thereafter appeared before the Immigration Inspector at Havre, on June 7th, 1917; the son Willie Henry Ulmer, relator herein, was then under 16 years of age and not subject to a head tax. According to the testimony of Peter Ulmer and his son, Albert, the head tax of eight dollars was paid the Inspector for the father, mother and son, Albert, the others not being subject to a tax. Another contention of the government is that Havre was not a port of entry, but notwithstanding this a certificate of arrival was issued and later on certificates of Naturalization were issued to relator's father and mother, and to the date of hearing no proceedings have ever been instituted to set them aside. Relator was 13 years of age when his father was naturalized as a citizen on October 23rd, 1923, and 20 years of age when his mother

became a naturalized citizen on November 18th, 1930. Relator was born in Canada December 23rd, 1909. The Immigration Inspector admitted Relator to permanent residence at Havre on June 7th, 1917, and he thereafter lived continuously in Hill County, Montana, with his parents, with the exception of two or three short visits to relatives in Canada. Under the state of facts here disclosed Relator would become a citizen of the United States (Sec. 7, Title 8, U.S.C.A.).

■ Peter Ulmer came into Hill County with his family by horse and wagon, unloaded his household goods about six miles south of the boundary line and erected a shelter for the protection of his family and household effects; thereafter they drove to Havre, a distance of 30 miles, and presented themselves to the nearest Immigration Inspector, and all the formalities required by law on such an occasion seem to have been complied with, so far as they knew and so far as the Inspector advised them. There is no question of bad faith anywhere apparent in these proceedings. The head tax is shown to have been paid by the relator's father, mother and brother; opposed to this proof the government offers the letters from the Helena office to the Inspector at Havre calling for the collection of the head tax in question; it also appears that letters from the same source were directed to Peter Ulmer at Havre, demanding payment of head tax; Peter Ulmer testified that he never received such letters and that his address at the time was Phipps and not Havre. Samuel C. Walker, a veteran of the Civil War, of advanced age, was the Immigration Inspector at Havre on June 7th, 1917, and for some time before and subsequent to that date; he died several years ago. Whether at a later date this Inspector remitted the amount of the head tax to the Helena office does not appear, but it is clearly in evidence that the Helena office did issue a Certificate of Arrival, for Peter Ulmer, and it is hardly fair to assume that it would have done so if the head tax remained unpaid; it was the Helena office that first raised the question of failure to pay, and it seems probable that a satisfactory adjustment was made, otherwise this office would not have issued the Certificate of Arrival, the presumption being that official duty was regularly performed. Coupled with these circumstances the positive testimony of the Ulmers that the head tax was paid lends additional weight to the presumption of payment. Additional proof of approval is found at the end of Exhibit B, which is the application of Peter Ulmer, alien, for residence in the United States, in the following certificate: "By virtue of authority given me in paragraph 4 (a) of Bureau General Letter of December 10th, 1915, No. 33990-142, 53884, I declare this alien eligible for residence in the United States. (Sgd.) Samuel C. Walker, Immigrant Inspector," and directly following above in the same exhibit appears the following endorsement; "25/1531 Helena, Montana, June 18, 1917. Approved and forwarded. C K A / C I W, Inspector in charge."

The Whitty Case, Whitty v. Weedin, 9 Cir., 68 F.2d 127, is strongly relied upon by the government. In that case there was no record found or produced to show whether Whitty ever entered the United States. He had been convicted of bigamy in Canada and claimed to have entered the United States through the Port of Seattle soon after his release from prison, about 1915, but there was no evidence of his entry other than his own statement. Whitty testified that he made three short visits to Canada, the last one in the year 1928 and on his return, entered the United States without an immigration Visa.

■ The facts in the Whitty Case are different from the present case; there the applicant entered without a visa and as an alien, and having no record facts justifying his entry in this manner, such as this relator had on his return to this country in 1932; he came without a visa under the claim of American citizenship through the naturalization of his father. In Exhibit H, the Assistant Commissioner at Seattle said in a letter to the District Director at Helena, under date of February 19th, 1927: "The fact that they (the Ulmers), were given an examination at one time, which was not completed because of their failure to pay head tax, can not be considered as entering at this time." This seems to be the principal bone of contention, since the question of moral turpitude has been eliminated. Let it be assumed that Peter Ulmer came to this country without a visa from some Consular or Immigration Officer in Canada, but entered at a Port of Entry—it is probable that Havre or Helena should be regarded as such —and submitted to inspection, examination, and paid the head tax; his application for admission to residence was approved by the proper officers both at Havre and Helena, and he was later accorded a Certificate of Arrival and thereafter became a naturalized citizen. Under such a state of facts can

relator, who was under sixteen at time of entry and a minor at time of his father's naturalization, be deported? Only in case of alienage can deportation take place; in this case the burden of proof rests upon the government. In Ng Fung Ho v. White, 259 U. S. 276, 42 S.Ct. 492, 66 L.Ed. 938, it was held (page 495): "Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact." Has the government established the alienage of the relator by a preponderance of the evidence? That seems to be the requirement. Under all the evidence in the case this Court is unable to hold that the government has proven its case by a preponderance of the evidence; in fact, the preponderance of the evidence is in favor of relator, and therefore in the opinion of the Court the Writ should issue, and it is so ordered.