**YUEN BOO MING v. UNITED STATES.**

No. 8901.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1939.

Adam Beeler and Edwards Merges, both of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., and Gerald Shucklin, Asst. U. S. Atty., both of Seattle, Wash. (J. P. Sanderson, U. S. Immigration Service, of Seattle, Wash., on the brief), for the United States.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order for deportation of one found to be the son of an United States citizen of Chinese descent, and certified as a citizen on August 22, 1922, by a board of three members of the Immigration Bureau in a Chinese exclusion proceeding. The complaint on which the appellant was arrested was filed on August 12, 1937,—that is 15 years after the Board's determination of his citizenship.

The case is an important one, showing the continuance of the violation of the "fundamental principles of justice embraced within the conception of due process of law," as expressed by Mr. Justice Hughes in Tang Tun v. Edsell, 223 U.S. 673, 682, 32 S.Ct. 359, 363, 56 L.Ed. 606, and as held in an opinion of Mr. Justice Clarke: "The acts of Congress give great power to the Secretary of Labor over Chinese immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power. * * * *It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country.*" (Italics sup-

plied.) Kwock Jan Fat v. White, 253 U. S. 454, 464, 40 S.Ct. 566, 570, 64 L.Ed. 1010.

■ We have had occasion to comment upon such conduct of the Immigration Bureau in two cases formerly before us, Lau Hu Yuen v. U. S., 9 Cir., 85 F.2d 327, and Chun Kock Quon v. Proctor, 9 Cir., 92 F. 2d 326. The instant case requires us again to advise the Bureau officials: "Their obligation as enforcers of the immigration laws is as mandatory to establish citizenship, if it exist, as it is to deport the alien." Lau Hu Yuen v. U.S., supra, page 331 of 85 F.2d.

■ The complaint on which the appellant was arrested charges nothing actually known as a fact by the party making the oath required by the statute,[1] but only the information and belief of the Bureau official and, as will appear, he bases his charge on an unwarranted conclusion of law.

His information and belief extended only to the following facts:· "That Yuen Boo Ming is an alien of the Chinese race with a status of laborer; that on the 12th day of August, 1937, the said Yuen Boo Ming was at Seattle, Washington, in the Northern Division of the Western District of Washington and within the jurisdiction of the United States District Court for said Division and District; that said Yuen Boo Ming was born in China and entered the United States on the Steamship President McKinley at Seattle, Washington on July 21, 1937, at which time he gained admission through a fraudulently obtained citizen's return certificate and therefore not legally admitted to the United States; * * *."

There is here no allegation of any fraud showing that the arrested man was illegally within the United States. It is elementary that even in ordinary civil suits the use of the words "fraudulently obtained" does not charge a fraud. This phrase states a conclusion which may be satisfied by facts describing one or another of a score of possible frauds. It may be the bribery of one of a dozen persons—federal officers in Seattle or Washington, D. C., in-, terpreters or witnesses. It may be perjury of witnesses. It may mean forgery of documents, or their alteration or substitution of one person for another.

A fortiori is this absence of pleaded fact a violation of our concept of "due process",

where the complaint is made the basis of a warrant of arrest issued without a hearing and under which the arrested man is deprived of his liberty as if he had been indicted for a crime.

■ The above quoted language of the complaint is followed by a mere conclusion of law: "that the said Yuen Boo Ming is a person prohibited by the laws of the United States from being in or remaining in the United States, and is not now lawfully entitled to be in or remain in the United States;". This allegation is meaningless unless it is an extension of the matter relating to his status as a laborer. It suggests nothing of his true status—one found and certified to be a citizen.

■ In the administration of the deportation provisions of this statute[2] it would be well for the Immigration Bureau to remember that Congress as well could have drawn it with the words "Jewish" or "Irish" or "Nordic" or "German" or "Italian" determining the "descent" of those to be imprisoned under its provisions. With the alteration in the statute of but one descriptive word, the friendless citizen grandson or granddaughter of a deceased Italian cobbler or Jewish United States Circuit Judge, under circumstances not infrequent since the depression and working in this country in a gas station or a laundry or on a PWA project, who crosses the border line into Mexico, on his or her return as well could be held imprisoned by the Immigration authorities on an information and belief complaint that he or she is an alien Italian or Jewish laborer who has entered the country fraudulently.

While such procedure may be lacking in some incidents of the "lettres de cachet" of the French Louis, the confinement which ensues is obtained without any preceding hearing in which the Italian, Jewish or other citizen of foreign descent may participate. True, bail may be procured, as here in the sum of $3,000, but such bail presumes a citizen of means or with such friends. From his confinement, without charge of any facts of an offense on which he may be deported, he must gather the evidence on which he will be tried. Even assuming a complaint properly charging the facts, the imprisonment without hearing of such Italian or Jewish boy or girl and the compulsion of the preparation of his or her affirmative proof (8 U.S.C.A. § 284)

---

[1] 8 U.S.C.A. § 282.
[2] 8 U.S.C.A. § 282 (deportation) § 284

(burden of proof of citizenship on Chinese descended citizen).

while in confinement (8 U.S.C.A. § 282), is an affront to the ordinary citizen's concept of "due process". The statute has been held constitutional. What we are considering here are the canons of its administration.

■ In addition to the injustice of arresting appellant, so having been determined to be a citizen, without advising him of the facts of the charge on which he was arrested, we find another violation of the established criterion of administrative conduct in such cases "to prevent abuse of this extraordinary power" of arrest and trial. Instead of performing their duty which "is as mandatory to establish citizenship, if it exist, as it is to deport the alien", the contrary appears. The complaint appears to charge only some unnamed fraud by a Chinese laborer (8 U.S.C.A. §§ 275, 276, 277) to procure a *"return* certificate", upon which fraud the record shows not a scintilla of evidence, while the Bureau *intended* to keep him detained and to proceed against him for a different fraud, not mentioned in the complaint, in a different proceeding in which his citizenship was established and a certificate of identity with the status of citizen issued under the regulation of the Secretary of Labor. We have held that this cannot be done in Chang Chow v. U. S., 9 Cir., 63 F.2d 375, 376.

■ On the *concealed* charge, which the record shows the Immigration officials *intended to be prosecuted,* the possession of the certificate establishes the arrested man's prima facie case of citizenship, which casts on the Bureau the burden of producing substantial evidence of alienage. The case is within the Fifth Amendment, U.S.C.A. Const., and the question must be tried with all the sanctions afforded by judicial process, of which the effect of the prior determination of citizenship is a part. Cf. Ng Fung Ho v. White, 259 U.S. 276, 283, 284, 42 S.Ct. 492, 66 L.Ed. 938.

■ It is obvious that the Bureau owed the established citizen the duty to state the fact of his status as such in the complaint upon which the warrant of arrest was to be issued. Again we have an illustration of one of the reasons why there is current in America the phrase "a Chinaman's chance", referred to in the Chun Kock Quon opinion.

■ It was on the latter charge that the United States Commissioner and the district court tried the case and upon which

it was presented here. The appellant, in 1922, was proved a citizen son of a native born Chinese father at a hearing at which was considered the testimony of two white and five Chinese persons in addition to the father and son. Certain statements of the father, conflicting with those made earlier, were fully considered by the three members of the Immigration Bureau's Board of Inquiry, and, on the testimony of the *nine* witnesses, the determination of citizenship was made and the certificate issued.

Fifteen years later, after the citizen had become the father of several children, also citizens, came his arrest in this proceeding. How the 15 intervening years could scatter the seven corroborating witnesses is apparent. The father is again examined on the discrepancies considered by the Board establishing his son's citizenship, and nothing is elicited to weaken the testimony in the first proceeding. The son is examined on an alleged identification of himself by a different Chinese name from that of the certificate of citizenship granted in 1922 in a telephone conversation during his recent detention, in which he was not recognized by his first use of the name in his certificate. This was claimed to have been overheard by a Chinese employee of the Bureau. Though not shown to have been an expert in the custom of nomenclature of the Chinese with whom appellant associated, this witness testified concerning the name Ng Quong Ming, telephoned by appellant after he had first given the name of Yuen Boo Ming.

" * * * so he said 'I am Ng Quong Ming.' If he belonged to the Ng clan *I do not think* he would be a member of the Yuen or Goon clan.

* * * * * *

"The Chinese in southern China are divided up into clans, and the Ng clan is a distinct clan and the Yuen family is a distinct clan. The Ng and Yuen clans are two separate and distinct clans of people."

Appellant denied that he had described himself by both names and the Chinese employee may well have misunderstood the half of the telephone conversation he heard. His "I do not think" conclusion is of no weight. It appears that among the Chinese people, as with those under the English common law, one may properly have several names. The *testimony,* which included all that taken in several hearings in the Bureau, showed appellant had at least two names, the second acquired, under a Chinese custom, at his marriage. There is no

showing that he could not or had not joined the Ng clan and so acquired a third name.

Apparently realizing the weakness of such testimony in a proceeding to deprive appellant, so determined to be a citizen, of what Mr. Justice Brandeis has stated may be "all that makes life worth living"[3] the Bureau attempts to establish fraud in the hearing in which his citizenship was determined, by smearing the reputation of the Bureau's Board of Inquiry. This attempt is by assertions in a brief on which appears the name of the same Bureau official who prepared the complaint on which we have commented, and who conducted the hearing before the United States Commissioner. Substituting the name Smith and Brown for the named inspectors, the brief states: "Parenthetically it may be stated here that Inspector Smith was *separated from the government service in 1923 and Inspector Brown left the State of Washington in 1927 and is no longer employed by the government.*"

This parenthetical slur on the Inspectors of the Special Board of Inquiry was the concluding statement of fact leading to a discussion headed "Discovery of Fraud in Appellant's Original Admission". On the argument here, under pressure from the court for the warrant for these assertions concerning the Inspectors, it was admitted that so far as concerns any record made in the proceedings below they were false. If a Bureau official is guilty of such injustice to a descended Chinese citizen here, one can imagine what chances of justice and fair play such a citizen may have in the proceedings of a Bureau holding him in its detention.

Since despite the character of the complaint, the appellant has had his trial on the question whether there was fraud in the proceeding in 1922 determining his citizenship, we deem the complaint amended to contain a proper charge that he is an alien not entitled to reside in the United States, and hold that it affirmatively appears there was no fraud in that proceeding and that appellant is a citizen of the United States.

The decision of the district court is reversed and appellant ordered discharged from the custody of the Immigration authorities.

Reversed.

MATHEWS, Circuit Judge, concurs in the result.

---

[3] Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938.