IN THE MATTER OF AN UNAUTHORIZED CROSSING AT
GRADE OVER THE MAIN LINE TRACK OF THE
GREENWOOD LAKE BRANCH OF THE ERIE RAILROAD
COMPANY IN THE VICINITY OF DEWEY AVENUE IN
SINGAC, LITTLE FALLS TOWNSHIP, PASSAIC COUNTY,
NEW JERSEY.

ERIE RAILROAD COMPANY, APPELLANT, v. BOARD OF
PUBLIC UTILITY COMMISSIONERS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 1960—Decided December 23, 1960.

480

Before Judges CONFORD, FREUND and KILKENNY.

*Mr. Charles V. Webb, Jr.* argued the cause for appellant (*Messrs. Gaffey & Webb,* attorneys).

*Mr. Richard F. Green,* Deputy Attorney General, argued the cause for respondent Board of Public Utility Commissioners (*Mr. David D. Furman,* Attorney General, attorney).

*Mr. Mitchel F. Donato* argued the cause for respondent Township of Little Falls.

The opinion of the court was delivered by
KILKENNY, J. A. D. Erie Railroad Company, hereinafter referred to as "Erie," appeals from two orders of the Board of Public Utility Commissioners, hereinafter referred to as the "Board," directing Erie to furnish grade crossing protection at the "Dewey Avenue crossing" of the railroad's Greenwood Lake Branch in Singac, Little Falls Township, Passaic County, New Jersey. The crossing protection required was in the form of automatic flashing light warning signals with back lights and bells and appurtenant warning signs. After the first order of December 28, 1959, the Board granted Erie's application for a rehearing. Upon such rehearing, the Board modified its finding somewhat as noted below, but affirmed its direction for the same grade

crossing protection by a second order of April 28, 1960. This court, by order of June 29, 1960, has stayed execution of the Board's orders pending final disposition of this appeal.

On September 1, 1959 a ten-year-old girl, while riding a bicycle on this unprotected crossing, was struck and killed by an Erie train, which was proceeding along its single main line track at that point. Evidently, this unfortunate accident sparked the hearings before the Board, which resulted in its two decisions and orders aforesaid.

## I.

Erie first challenges the *jurisdiction* of the Board to determine that Dewey Avenue is a "public highway" where it intersects Erie's tracks, and that the crossing is a "public crossing."

In its first decision, the Board found "that *a public road by prescription* has been acquired on lands of the Erie Railroad Company at Dewey Avenue," and that "inasmuch as the crossing in question is *a crossing on a public road* with the tracks of the railroad, the Board under *N. J. S. A.* 48:2-29 and *N. J. S. A.* 48:12-54 has authority to prescribe protection for it." (Emphasis supplied)

In its second decision, the Board expressly rescinded its previous finding that "a public road by prescription has been acquired" as aforesaid and substituted as its finding,

"* * * that a *public highway*, to wit, Dewey Avenue and the single main line track of the Greenwood Lake Branch of the Erie Railroad cross one another at the same level * * *; and that conditions at such grade crossing make it necessary that some reasonable provision for the protection of the traveling public be adopted." (Emphasis supplied)

Since the Board's earlier finding that "a public road by prescription has been acquired" was expressly rescinded by the Board itself in its second decision, we are not required to pass upon the Board's power to make such a finding of prescriptive property rights. The respondent Township of Little Falls expressly concedes in its brief that "the Board

does not have power under the legislative grant to determine such rights (prescriptive)—that is solely for our courts to determine." It agrees that *In the Matter of Central Railroad Company of New Jersey*, 4 *P. U. R. 3d* 288 (1953), and *New York, Susquehanna & Western R. Co. v. Board of Public Utility Commissioners*, 90 *N. J. L.* 432 (*Sup. Ct.* 1917), affirmed 91 *N. J. L.* 701 (*E. & A.* 1918), so hold. The Board itself makes no contention herein that it has any power to determine proprietary interest by prescription in this railroad crossing. The Board and the township choose to defend the Board's jurisdiction on broader bases.

*R. S.* 48:2–29 provides:

"Whenever it shall appear to the board that a *public highway* and a railroad * * * cross one another at the same level and that conditions at such grade crossing make it necessary * * * that some * * * reasonable provision for the protection of the traveling public be adopted, the board may order the railroad * * * to install such protective device or adopt such other reasonable provision for the protection of the traveling public at the crossing as in the discretion of the board shall be necessary." (Emphasis supplied)

Since this statute vests the Board with power to order a railroad to protect the traveling public whenever "it shall appear to the board" that a "public highway" and railroad cross at the same level, the Board must of necessity possess the power to make the jurisdictional fact findings in order to act. One of those jurisdictional facts is that a "public highway" exists at the railroad crossing. Erie's argument that this jurisdictional fact finding by the administrative agency, that a public highway crosses the railroad at grade level, constitutes an invalid usurpation of judicial power is without substantial merit. It is based upon the unwarranted assumption that the Board's determination constitutes an adjudication of property rights, such jurisdiction admittedly being vested in the County and Superior Courts by *N. J. S.* 2A:35–1. Such a contention was rejected in the comparable cases of *Erie R. Co. v. Board of Public Utility Com'rs*, 87

*N. J. L.* 438 (*Sup. Ct.* 1915), reversed on other grounds 90 *N. J. L.* 271 (*E. & A.* 1916); *Erie R. Co. v. Board of Public Utility Com'rs,* 89 *N. J. L.* 57, 91 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 672, 673 (*E. & A.* 1917), and by the U. S. Supreme Court, 254 *U. S.* 394, 41 *S. Ct.* 169, 65 *L. Ed.* 322 (1921); and *Erie R. Co. v. Board of Public Utility Com'rs,* 107 *N. J. L.* 409 (*Sup. Ct.* 1931), affirmed *per curiam* 109 *N. J. L.* 264 (*E. & A.* 1932).

The Legislature has vested power in the Board to act in the interests of public safety. "It would be of no practical value to make regulations regarding such matters unless the board entrusted with the care of the subject had power to give effect to such regulations." *Erie R. Co. v. Board of Public Utility Com'rs,* 87 *N. J. L.,* at *page* 443. And in the same case, we note, at *page* 443:

"The powers conferred are administrative and the fact that the board can put the provisions of the statute into effective operation in any case where there are facts to which the statute applies, does not make the power judicial."

█ If the Board could not protect the traveling public at a dangerous crossing, until after a judicial determination of property rights in protracted litigation, the beneficent purposes of the statute and the Board's power to act would be practically destroyed. The recent fatal accident at this unprotected crossing and the potential peril to the numerous others who use it daily require speedy fact findings that the crossing is a public crossing. Judicial determination is not necessary *before* administrative action to comport with due process of law. It is enough if there is judicial review, at least of the jurisdictional facts *after* the administrative agency has acted. *N G Fung Ho v. White,* 259 *U. S.* 276, 42 *S. Ct.* 492, 66 *L. Ed.* 938 (1922); *Crowell v. Benson,* 285 *U. S.* 22, 52 *S. Ct.* 285, 76 *L. Ed.* 598 (1932); *St. Joseph Stock Yards Co. v. U. S.,* 298 *U. S.* 38, 56 *S. Ct.* 720, 80 *L. Ed.* 1033 (1936).

██ We conclude that the Board did have jurisdiction under *R. S.* 48:2–29 to decide that Dewey Avenue at the railroad crossing was a "public highway" and a public crossing, and upon that jurisdictional fact finding to determine the applicability of *R. S.* 48:2–29.

Furthermore, the Board also has jurisdiction to act under *N. J. S. A.* 48:2–13, its general supervisory power, and *R. S.* 48:2–23, by which it may direct a public utility to maintain its property in such condition as to enable it to furnish safe service. This was pointed out in the case of *In re Central R. Co.*, 30 *N. J. Super.* 520 (*App. Div.* 1954), in which the court stated at *page* 524:

"We think the board, by virtue of the jurisdiction and control vested in it by *N. J. S. A.* 48:2–13 and 48:2–23 over the railroad's property, has the authority to order the railroad to barricade that property for the safety of the public and of persons using the trains. It has been said broadly that the board was given by the Public Utilities Act full control of all public utilities, so far as could be done by legislation [cases cited]. At any event, the board by force of the statutes cited has plenary power over railroad property in the interests of safety, and, indeed, is vested with a high and continuing public responsibility in that regard [cases cited] * * *."

Our Supreme Court, in *Pennsylvania R. Co. v. Department of Public Utilities*, 14 *N. J.* 411, 425 (1954), stated:

"The cited statutory provisions (*R. S.* 48:3–3; 48:2–13; 48:2–23) are wholly adequate to support the board's *jurisdiction* to order railroads to adopt practices which are found to be justly and reasonably necessary to afford safe transportation to the public." (Emphasis supplied)

In the face of Erie's inaction to protect this crossing, *regardless of whether it was publicly or privately owned,* the Board had the power in the interests of safety to the public, riding Erie's trains or using the crossing on foot, bicycle, or by other vehicle, to direct the necessary protective devices specified in its orders. The Board's power to compel a railroad to keep in repair "passages over" the right

of way, so that public travel may not be impeded, where "any road" crosses the railroad right of way, is set forth in *R. S.* 48:12–49. This further evidences legislative intent to give the Board a broad jurisdiction to act in protecting the railroad's passengers and the traveling public generally.

## II.

Erie next contends that the record does not support the Board's finding that the road in question is a "public highway." While jurisdiction to act is not conditioned on a finding that a public highway exists, except under *R. S.* 48:2–29, as noted above, we feel that the Board was justified in finding that a "public highway," within the meaning of *R. S.* 48:2–29, did exist.

The evidence discloses the following facts. The Dewey Avenue crossing of Erie's tracks has existed since at least 1907. Erie has a 1907 record that there then existed a "planked private crossing at the location." Erie admits it has no precise record as to the time the crossing was first established. There is some uncertainty as to who "black-topped" the existing railroad crossing. Under *R. S.* 48:12–54, a railroad must provide protection at every crossing of its tracks by any public road which is improved by joint action of the state and a municipality or county. Dewey Avenue is a 40-foot-wide, township-paved and maintained street, at least up to and on both sides of the railroad right of way. The township removes the snow from the crossing. The police and fire departments of Little Falls, in the performance of their public duties, use the Dewey Avenue railroad crossing daily. A 24-hour traffic count on October 28, 1959 showed that 311 automobiles, 41 trucks and 44 pedestrians, or a total of 396, crossed the Dewey Avenue railroad crossing in that one-day period. The crossing is also used by passengers boarding and alighting from Erie's trains, by reason of the station stop immediately adjacent to the crossing. It is a publicly used highway, irrespective of legal

title to the fee. Erie has not stopped this daily traffic in the past 53 years, has not barricaded the crossing, and has sought no injunction to restrain this obvious public use, of which it has been admittedly aware. Erie's only attempt to assert any right in and to the crossing has been the posting of a sign at either side of its right of way, bearing the legend "Erie Railroad Property No Trespassing." But these signs are so placed, as shown by pictures in evidence, as to make it dubious that they refer to the crossing itself, rather than to the adjacent railroad right of way. Erie's witness, Mr. Scott, testified: "The no trespassing sign is primarily for a safety measure over the railroad. We don't permit them to go on the track itself where they would be hit. We do that work ourselves." Erie has not regarded the extensive daily crossings by the public as a trespassing.

The Board could properly find from this evidence that the continued use of this crossing by the general public for at least 53 years last past constituted such a public user in this right of way as to make it, at least, a *de facto* public crossing, sufficiently definite so as to appear to the Board a public highway within the purview of *R. S.* 48:2–29. If Erie sought now to restrain this public user of the crossing by court injunction or by the erection of barricades, then a judicial determination could resolve the questions of title to the property and the right of public easement. But until that is done, the Board's finding that Dewey Avenue as extended across the Erie Railroad is a "public highway" for the purpose of invoking adequate safety measures is sufficiently supported by the trial record. Such a determination by the Board does not adjudicate property rights. If the passage over the railroad *right of way* is in fact used by the public as a public street, the dangers at the unprotected crossing are the same, whether property in the crossing is public or private. As we have indicated above, the Board's power to order protection at any crossing is not limited to *R. S.* 48:2–29, but may be justified also under *N. J. S. A.* 48:2–13 and *R. S.* 48:2–23.

## III.

Erie's final point is that the Board's order directing Erie to furnish crossing protection was "arbitrary, capricious, and unwarranted," considering all of the evidence. It contends that the Board ignored alternate means of access which would adequately serve the public use and convenience and permit the closing and barricading of this crossing. It refers to the Board's order to show cause, issued after the fatal accident of September 1, 1959, calling upon Erie to show cause why the crossing should not be closed and barricaded. However, that order also stated, "or why the Board should not make such other order relating to the matter as the Board may after said hearing find to be just and reasonable." Erie relies upon *In re Petition of Bergen County,* 31 *N. J.* 254 (1959), in which the Supreme Court, in reversing a Board's order requiring the railroad to reconstruct or replace an over-pass, stated at *page 263*:

"* * * our act is construed reasonably but liberally in favor of the public, *New Jersey Highway Authority v. Central R. Co. of N. J., supra,* 21 *N. J.,* at *page* 165, elements of public use, convenience of use and need for use in the locality are proper subjects for consideration."

And at *page 264*:

"The Board has wide discretion in dealing with problems such as the present one. Ordinarily the judiciary will not interfere with the determination made if it is supported by substantial evidence."

Governed by those rules of guidance, the Board's determination here is supported by substantial evidence. The need for protection at the crossing is beyond dispute. If we needed evidence beyond the fatal accident of September 1, 1959, we find it in the trial record of other accidents at this same crossing and in the potential danger to the great number of daily users. Faced with serious doubt as to the railroad's right to close and barricade the crossing, because

of the obvious public use thereof as a highway for more than 50 years, and, moreover, realizing that the amount of vehicular travel thereon perhaps justified keeping it open, and confronted with the urgency of protecting the public travelling along Dewey Avenue and Erie's own passengers, as highlighted by the recent fatality, it was not unreasonable or arbitrary or unwarranted for the Board to direct Erie to protect the crossing with automatic flashing light warning signals, back lights, bells and appurtenant warning signs. At least, until such time as Erie established in a court a right to close and barricade the highway crossing, or actually barricaded it, the Board action was realistic, expedient and proper, and prompted by the exigencies of the situation. It seems anomalous for Erie to argue against the Board's jurisdiction to decide that Dewey Avenue is a "public highway," while insisting that the Board has jurisdiction to determine that the crossing is Erie's "private" property and that Erie should have a right to close and barricade it.

It is our judgment that the orders of the Board of Public Utility Commissioners should be affirmed.