315 F.2d 673
 UNITED STATES of America ex rel. Herman Frederick MARKS, Relator-Appellant-Appellee,
v.
P. A. ESPERDY, as District Director of the Immigration and Naturalization Service, New York District, United States Department of Justice, Respondent-Appellee-Appellant.
 No. 170.
 Docket 27557.
 United States Court of Appeals Second Circuit.
 Argued December 11, 1962.
 Decided April 9, 1963.
 
 Murray A. Gordon, New York City, for relator-appellant-appellee.
 Vincent L. Broderick, U. S. Atty., S. D. N. Y. (Roy Babitt, Spec. Asst. U. S. Atty., of counsel), for respondent-appellee-appellant.
 Before WATERMAN, SMITH and HAYS, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 Herman Frederick Marks was born in Milwaukee, Wisconsin, on August 1, 1921. In 1958 he went to Cuba and there joined Fidel Castro's revolutionary forces fighting in the Sierra Maestra Mountains to overthrow the government of Fulgencio Batista. After the revolution was brought to a successful conclusion in January 1959, Marks continued to serve as a captain in the Cuban Rebel Army. He was placed in command of some 7,000 to 8,000 men charged with the security of La Cabana, a military prison and fortress in Havana. There he presided over the execution of numerous prisoners condemned to death by military tribunals. Later he was assigned to give instructions on the use of weapons at a military police school and at Principe Prison, where he again commanded a unit of security guards.
 
 
 2
 In May 1960, Marks, having lost favor with the Castro regime, left Cuba and in July of that year re-entered the United States.
 
 
 3
 In January 1961, Marks was arrested by officers of the Immigration and Naturalization Service. The Attorney General commenced deportation proceedings against him charging that, pursuant to 8 U.S.C. § 1481(a) (3),[1] he had lost his American citizenship by serving in the armed forces of a foreign country without authorization of the Secretary of State and the Secretary of Defense; and, that being an alien, he was a deportable one, 8 U.S.C. § 1251(a) (1), as he had been convicted in 1951 of a crime involving moral turpitude, 8 U.S.C. § 1182(a) (9), and as he had entered the United States, upon his return from Cuba, without appropriate alien documents. 8 U.S.C. § 1182(a) (20).
 
 
 4
 After a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service, Marks was ordered deported on the grounds set forth above. The Board of Immigration Appeals sustained the order of deportation.
 
 
 5
 Marks thereupon petitioned the United States District Court for the Southern District of New York for a writ of habeas corpus, challenging (1) his alleged loss of citizenship, and thus the jurisdiction of the Attorney General in the prior administrative deportation proceedings; (2) his deportability under 8 U.S.C. §§ 1251(a) (1), 1182(a) (9) and 1182(a) (20), even should he be determined to be an alien; and (3) the lawfulness of his detention, should he be declared to be legally deportable, as he would then be stateless and thus not actually deportable to Cuba or to any other country.
 
 
 6
 After a hearing upon the issues so raised, the district judge ruled that Marks had lost his American citizenship by virtue of serving in the armed forces of Cuba after the successful conclusion of the Castro revolution. Marks appeals from that determination, claiming, as he did below, that the Rebel Army did not constitute the "armed forces of a foreign state", within the meaning of 8 U.S.C. § 1481(a) (3), that his service in the Rebel Army during 1959 and 1960 was involuntary, and that § 1481(a) (3) as here applied is unconstitutional in that it imposes a cruel and inhuman punishment in violation of the Eighth Amendment. Although we find great force in the constitutional arguments presented by relator's counsel, we are constrained by the superior authority of Perez v. Brownell, 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603 (1948), to affirm the determination of alienage on the opinion of Judge Cashin, the district judge below, 203 F.Supp. 389 (1962).
 
 
 7
 Despite his determination adverse to the relator on the issue of alienage, Judge Cashin granted the writ of habeas corpus relator sought, for he held that Marks was not deportable under either 8 U.S.C. § 1182(a) (9) or 8 U.S.C. § 1182(a) (20), the provisions relied upon by the Attorney General in the prior deportation proceedings.[2] We hold that the determination of the district court was erroneous in this respect and that the order of deportation was valid.
 
 
 8
 Section 241 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1251, provides, in material part, that
 
 
 9
 "(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who —
 
 
 10
 "(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;"
 
 
 11
 Section 212(a) (20) of the same Act, 8 U.S.C. § 1182(a) (20), provides for the exclusion from the United States of any alien immigrant
 
 
 12
 "* * * who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter * * *."
 
 
 13
 It is conceded that Marks possessed none of the documents required of entering alien immigrants at the time of his return to the United States from Cuba in July 1960. Though he had been served with a certificate of loss of American citizenship, he effected entry as a returning native-born citizen who did not need the documents required of alien immigrants. The district judge ruled, however, that §§ 1251(a) (1) and 1182 (a) (20) were inapplicable to the novel facts of this case, for he held that inasmuch as, prior to Marks' reentry in 1960, there had been no adjudication of his alienage in any judicial proceeding, no competent determination of Marks' alienage had been made at the time of his entry.
 
 
 14
 It is clear that when an alleged alien claims United States citizenship and supports his claim by substantial evidence, he is entitled by the due process clause of the Fifth Amendment to have his American citizenship vel non determined by a judicial tribunal. Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922); Perez v. Brownell, supra; Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082 (1939). It is equally clear that Congress sought by the enactment of Section 356 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1488, to have loss of nationality occur immediately upon the commission of expatriating acts:
 
 
 15
 "The loss of nationality under this Part shall result solely from the performance by a national of the acts or fulfillment of the conditions specified in this Part."
 
 
 16
 See Hearings Before the Committee on Immigration and Naturalization on H.R. 6127, House of Representatives, 76th Cong. 1st Sess. (1940) at 504; Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). To accommodate the intent of Congress, therefore, Judge Cashin's determination of alienage must be interpreted to relate to the time of Marks' service in Cuba's Armed Forces unless such an application of § 356 is constitutionally prohibited.
 
 
 17
 We find no such prohibition. Were deportation under 8 U.S.C. §§ 1251(a) (1) and 1182(a) (20) a punishment for entry into the country in knowing violation of alien documentation requirements, the imposition of such a penalty based upon a post-entry determination of alienage would surely involve fundamental unfairness. Deportation under these statutory provisions is not a penalty for wrongdoing, however, but is rather the delayed exercise of the congressional power to exclude aliens from entry into the United States.
 
 
 18
 If Marks lost his American citizenship by virtue of service in the Cuban Armed Forces, as we are constrained to hold that he did, he became an alien in 1959 at the time the expatriating acts were committed, not at the time his alienage was judicially determined. Marks thereafter entered the United States without the documentation required of alien immigrants and is, on that ground, subject to deportation under 8 U.S.C. §§ 1251 and 1182(a) (20).[3]
 
 
 19
 The judgment of the district court is reversed, and the cause is remanded with instructions that the writ of habeas corpus be dismissed.
 
 
 
 Notes:
 
 
 [1]
 Section 349 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1481, provides in material part:
 "(a) From and after the effective date of this chapter a person who is a national of the United States whether by birth or nationalization, shall lose his nationality by —
 * * * * *
 (3) Entering, or serving in, the armed forces of a foreign state unless, prior to such entry or service, such entry or service is specifically authorized in writing by the Secretary of State and the Secretary of Defense * * *."
 
 
 [2]
 Having ruled that the order of deportation was invalid, Judge Cashin did not reach the relator's third contention, that his detention was unlawful on the ground that no country would accept him as a stateless deportee and therefore that he was not, in fact, deportable. Marks, who is now at liberty on a bond of $5,000, does not raise the question of his actual deportability upon these cross-appeals. Our disposition of these appeals is, of course, without prejudice to a renewal of that contention upon a new petition for a writ of habeas corpus, should the Attorney General again take the relator into custody
 
 
 [3]
 Because of our determination that the order of deportation was valid under § 1182(a) (20), we do not reach the question whether Marks was also deportable under 8 U.S.C. § 1182(a) (9), as the Attorney General contends, by virtue of a prior criminal conviction