Knut Adolph LARSSON, also known as Adolf Knute Larson, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 17688.

United States Court of Appeals Ninth Circuit.

Aug. 7, 1963.

Seymour Mandel, Los Angeles, Cal., for petitioners.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section; and James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before CHAMBERS, POPE and BARNES, Circuit Judges.

PER CURIAM.

This matter, held under submission by this Court until the United States Supreme Court decided Gastelum-Quinones v. Kennedy, 374 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013 is, on the basis of said decision, reversed and remanded to the Board of Immigration Appeals, United States Department of Justice, for reconsideration in the light of that decision.

POPE, Circuit Judge (concurring in part and dissenting in part).

I agree that the order of deportation must be reversed and set aside.

The respondent has conceded that the decision in Gastelum-Quinones v. Kennedy, 374 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013 "is applicable to the instant case." I think it is too clear for argument that the decision last mentioned must control our disposition of this case; but in my view there is no justification for any further remand for further action by the Immigration and Naturalization Service.

As the record and the briefs show, this matter has once before been remanded on September 8, 1958 to the Immigration and Naturalization Service "for reopening of deportation proceedings and further findings in the light of Rowoldt v. Perfetto, 355 U.S. 115, 78 S. Ct. 180, 2 L.Ed. 140." The subsequent order of the Immigration and Naturalization Service, which was made pursuant to that remand, is the order which we now review.

Since the Gastelum-Quinones case, supra, is controlling here, it is my view that we should follow that case in its entirety and do what was done by the Supreme Court there—simply set aside the order of deportation.

When the Immigration and Naturalization Service was required to reconsider the application for deportation in the light of Rowoldt v. Perfetto, supra, the Service was given directions which were as adequate and complete as any directions which we might conceivably give if we were to remand for further proceedings. True we could refer to Gastelum-Quinones, but an examination of the decision in Rowoldt shows that it decided fully and completely everything that was decided in Gastelum-Quinones respecting the type and amount and burden of proof which the Government must produce under an order of deportation.

542

It is true that in Gastelum-Quinones the Court said in so many words that the Government had the burden of proof of a claim of meaningful membership. The last paragraph in the opinion says that the Government "did not sustain its burden in establishing that petitioner was a meaningful member of the Party as contemplated by Section 241(a) (6) (C)." This was nothing new. Precisely the same thing was actually decided in the Rowoldt case. In that case (355 U.S. at p. 120, 78 S.Ct. at p. 183, 2 L.Ed. 140), the Court referring to and quoting from Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, said: "There must be a substantial basis for finding that an alien committed himself to the Communist Party in consciousness that he was 'joining an organization known as the Communist Party which operates as a distinct and active political organization * * *' 347 U.S., at 528 [74 S.Ct. at 741]. Bearing in mind the solidity of proof that is required for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for forty years, cf. Ng Fung Ho v. White, 259 U.S. 276, 284, we cannot say that the unchallenged account given by petitioner of his relations to the Communist Party establishes the kind of meaningful association required by the alleviating Amendment of 1951 * * *."

The opinion further shows that if there were any failure of complete proof as to all that happened, the Government's case must fail, thus showing that the burden of proof was clearly indicated as belonging to the Government. The Court said that in the case of Rowoldt "[his] dominating impulse * * * may well have been wholly devoid of any 'political' implications." In other words, it was not up to Rowoldt to prove that there were no political implications, but rather on the state of the record in the absence of any proof on the subject, the Court had

the right to assume that his affiliation may well have been thus devoid of political implications.

I submit that it is impossible to read the decision in Rowoldt without noting its clear determination that the burden of proof of "meaningful association" was upon the Government. In short, when the Immigration and Naturalization Service held the hearing which resulted in the order which is now before us, it could not say that it was in any doubt as to where the burden of proof lay.

The decision in Rowoldt is a simple one. It is that this basis for deportation is not mere nominal or signed-up membership in the Communist Party; it must be "meaningful membership" as defined in Rowoldt; that it is incumbent on the Government to prove such membership; and that such is its burden of proof is self-evident, for, as stated in Galvan v. Press, "deportation may * * * deprive a man 'of all that makes life worth living'; and, * * * 'deportation is a drastic measure and at times the equivalent of banishment or exile.'" (347 U.S. at p. 530, 74 S.Ct. at 742.) In the light of that proposition it would be fantastic to assume that the burden of proving that a nominal membership was not meaningful was on the defendant. Nothing in Rowoldt suggests any such thing. As I have indicated, its language is quite to the contrary.

And so when the Court in Gastelum-Quinones, supra, spoke of the Government not having sustained "its burden of proof" it was merely reciting the effect of the Rowoldt decision. To assume that this statement was a new doctrine,—a new rule,—is wholly erroneous.

In my view failure to bring this abortive attempt at deportation to a final conclusion and dismissal, as was done by the Supreme Court in Gastelum-Quinones, would operate to impose an unreasonable hardship upon this petitioner. This matter should end right now.