### ALBERT H. CONOVER v. CHARLES C. OLD.

Submitted July 8, 1910—Decided November 3, 1910.

1. Where no record of naturalization can be produced, evidence that a person, having the requisite qualification to become a citizen, did in fact vote and hold office is sufficient to warrant the inference that he had been duly naturalized. *Boyd* v. *Nebraska,* 143 *U. S.* 135, followed.
2. Before proof outside the record of naturalization can be resorted to, some excuse must appear for the substitution of secondary evidence for the documentary proof.
3. The extreme youth of the respondent at the time of his father's naturalization, the fact that they lived together but little and were at one time alienated from each other, that the father's naturalization was in a distant state and at an unknown place, and that there were other children who might have the custody of the father's certificate of naturalization, are sufficient to excuse the production of documentary proof of the fact of naturalization.
4. The naturalization of a father operates to confer the right of citizenship upon his minor child who is dwelling at the time of the father's naturalization within the jurisdiction of the United States, or who dwells within that jurisdiction subsequent to the father's naturalization and during his own minority.

Petition for leave to file *quo warranto.*

Before Justices GARRISON, SWAYZE and VOORHEES.

For the petitioner, *Stackhouse & Kramer.*

For the defendant, *Carrow & Kraft.*

The opinion of the court was delivered by

SWAYZE, J. This is an application by a citizen and taxpayer of Camden for leave to file a *quo warranto* against a member of the common council. The ground relied upon is that the defendant is not a citizen of the United States. The proof is that the defendant was born in England in 1853; his father came to the United States in the winter of 1853-1854, leaving the defendant with his grandparents in England. The father resided in the west for some years, but returned to Vineland, in this state, shortly before 1867, when the respondent, then fourteen years of age, came to this country and joined him there. The father, as he stated to the respondent, had been naturalized and had voted in the west. It is proved that he voted and held public office in Atlantic county, in this state. The respondent has voted since 1876, has been a candidate for public office, and has twice been elected to the common council of the city of Camden, and has served in that body. The question presented to us is whether, under these circumstances, we ought to grant leave to proceed by *quo warranto.*

We have no doubt that the facts stated present a question of fact as to whether or not the respondent is a citizen. In a proper case that fact ought to be submitted to a jury. The application for leave to file a writ of *quo warranto,* when made on behalf of a citizen or taxpayer, is addressed to the discretion of the court. *Mitchell* v. *Tolan,* 4 *Vroom* 195. Upon a consideration of the case, we are of opinion that no public good would be served and harm might be done by the delay and uncertainty incident to a trial of the question before a jury, and we are influenced in that result by the view that upon such a trial the verdict ought to be in favor of the respondent.

The proof of naturalization undoubtedly ought generally to be made by documentary evidence, but that is not always possible; and the Supreme Court of the United States, whose decisions ought to be our guide in a matter of this kind, has held that "where no record of naturalization can be produced, evidence that a person, having the requisite qualifications to become a citizen, did in fact and for a long time vote and hold office and exercise rights belonging to citizens, is sufficient to warrant a jury in inferring that he had been duly naturalized as a citizen." *Boyd* v. *Nebraska, 143 U. S.* 135 (at *p.* 181). The same view was subsequently expressed in *Conlzen* v. *United States,* 179 *Id.* 191 (at *p.* 196). It had previously been held in *Hogan* v. *Kurtz,* 94 *Id.* 773, in a case where the records had been destroyed. We do not question that before such proof outside of the record can be resorted to some excuse must appear for the subsitution of the secondary evidence for the documentary proof, as was held by the Supreme Court of Massachusetts in *Dennis* v. *Brewster,* 7 *Gray* 351. In this case such an excuse appears. The extreme youth of the respondent during the years when his father lived in the west, the fact that they lived together but little, and at one time were alienated from each other; that the respondent would hardly have been likely to inquire, and his father would hardly have been likely to state the exact place in the west where he had been naturalized; and the practical impossibility, in the absence of such information, of having an examination of the records made, together with the fact that there were other children who might very well have had the custody of the father's certificate of naturalization, are sufficient to warrant the resort to parol evidence. This evidence suffices to make a *prima facie* case for the respondent.

In *People* v. *Pease,* 27 *N. Y.* 45 (at *p.* 63), the Court of Appeals of New York, in reviewing a charge of the trial judge in a *quo warranto* case, held that in the absence of evidence tending to show that a man had ever been naturalized, and upon evidence that he was born in France and had voted, it was proper to charge that the legal presumption was that he

had been naturalized, since the presumption was that he had voted legally and not that he had committed a crime.

It was subsequently held in *Fay* v. *Taylor,* 63 *N. Y. Sup.* 572, that proof that decedent, who was an alien by birth, came to this country in 1865, lived here until his death in 1897, participated in elections and held a liquor tax certificate, which could lawfully be issued only to a citizen, was sufficient to show *prima facie* that he had been naturalized.

It is urged, however, that in this case the respondent not only admits that he was an alien by birth, but that he had never been naturalized, and relies upon the naturalization of his father, which, it is said, could not, under the law, operate in his favor under the circumstances of the case. This necessitates the examination of the law upon this subject. By the act of 1802, which now appears as section 2172 of the United States Revised Statutes, it was enacted that the children of persons who had been duly naturalized under any law of the United States, being under the age of twenty-one years at the time of the naturalization of their parents, shall, if dwelling in the United States, be considered as citizens thereof. It was, at one time, questioned whether this act applied to cases of naturalization after its date—that is, whether it was prospective in its operation or not. Chancellor Kent seems to have doubted the propriety of holding that the act was prospective, for he says (2 *Kent Com.* 51, 52) : "There is color for the construction that it may have been intended to be prospective and to apply as well to the case of persons thereafter to be naturalized as to those who had previously been naturalized." In a note added in a later edition, he concedes that the act had since been adjudged to be prospective. *West* v. *West,* 8 *Paige* 433. And this seems to be now settled law. It was so held by Mr. Justice Harlan, sitting at the Circuit in *United States* v. *Kellar,* 13 *Fed. Rep.* 82, and was assumed in Boyd *v.* Nebraska, above cited.

This view is not sufficient to dispose of the present case, for even though the act is prospective, it applies only to children, "if dwelling in the United States," a necessary qualification in view of the fact that if the children were not dwelling in

the United States they would be subject to the laws of a foreign jurisdiction. The mooted question on the construction of these words is whether the child must dwell in the United States at the time the parent is naturalized or whether, if the child is then a minor, he can profit by the parent's naturalization by subsequently dwelling himself in the United States. This question was not decided by the Supreme Court of the United States in the early case of *Campbell* v. *Gordon,* 6 *Cranch* 176, for in that case the child was dwelling in the United States at the time the act of 1802 was passed; nor was it decided in the very recent case of *Zartarian* v. *Billings,* 204 *U. S.* 170, for in that case the child, while actually in the port of Boston, was detained there as an alien under our Immigration act. She was, as the court said, debarred from entering the United States by the action of the authorized officials, and never having legally landed, of course, could not have dwelt within the United States. The Supreme Court of Illinois has held that the child did not become a citizen by virtue of the naturalization of the parent, unless the child was under twenty-one years of age and dwelt in the United States at the time of the naturalization. *Behrensmeyer* v. *Kreitz,* 135 *Ill.* 591, 628. The view of the Supreme Court of Illinois is adverse to the view which is taken by the department of state. This view and the grounds upon which it rests are stated in a carefully-formulated instruction sent by Mr. Blaine as secretary of state to Minister Phelps, at Berlin, and quoted at length in a dispatch from Secretary Hay to Minister Harris, at Vienna, to be found in 3 *Moo. Int. L. Dig.* 471: "The purport of that opinion [which is understood to have been prepared by Mr. John B. Moore, then assistant secretary, and now a known and recognized authority on matters of *international law*] is that the effect of the American law is to make actual residence in the United States, and not residence at the time of naturalization, the test of the claim of citizenship, inasmuch as the provision relates to children born of parents who are not at the time citizens of the United States, and upon whom the country of the parents, under the same rule of law as that announced by this government with respect to the chil-

dren born abroad of citizen parents, might have claims of allegiance. In respect to such persons the words 'if dwelling in the United States' recognize a possible conflict of allegiance. In the absence of any such conflict of allegiance being adversely raised by the government within whose jurisdiction the minor may be temporarily dwelling, there could be little doubt that the law of the country which naturalized the father would obtain; and in fact, it does obtain, by common consent, in the relations of the United States with Germany. In practice, therefore, it may be said that the naturalization of the father operates to confer the municipal right of citizenship upon the minor child, if he be at the time of the father's naturalization within the jurisdiction of the United States, or if he came within that jurisdiction subsequent to the father's naturalization and during his own minority." He adds: "The minor son is just as much naturalized by the fact of being within the jurisdiction of the United States at the time of the father's naturalization, or coming within that jurisdiction subsequently during minority, as if he himself had been admitted to citizenship by a decree of the court." Although this view of the department of state was not approved in so many words by the Supreme Court in Zartarian *v.* Billings, it was referred to without disapproval, and the facts of the case did not require the court to express an opinion thereon. The question is in effect a political question, and in its most important aspects will most frequently arise between the United States government and foreign governments. In such a case the construction put upon the statute by the federal government, in its relation with foreign powers, if not controlling upon the courts, must at least be most persuasive, and we ought to hesitate long before we adopt a different rule. It would be an anomalous result if we should hold that the respondent, who would be entitled to call upon the United States government for the full protection afforded to its citizens, was not qualified as a citizen to hold office in the State of New Jersey. We think also that the rule adopted by the state department is based upon sound reasoning. The natural and ordinary relationship between a father and his minor children is that of one family, and where

the family is separated by distance and the children dwell under a different sovereignty from the father, this natural and ordinary relationship is disturbed by the necessity of the case, because of the claims of a foreign government upon persons dwelling within its jurisdiction, and perhaps because of a consideration of the right of the child not to be expatriated without its consent, but it ought not to be disturbed more than is required by the necessities of the case, and that necessity no longer operates where the child leaves the jurisdiction of the foreign government and rejoins the father. The language of the statute is not such as to require us to hold that the child must dwell within the United States at the time of the father's naturalization. The language is that the children "shall, if dwelling in the United States, be considered as citizens thereof;" and the words "if dwelling in the United States" may be referred with as great propriety to the period covering the non-age of the child or to the time when the privileges of citizenship are claimed, or both, as to the time when the father is naturalized; and such construction would be in harmony with the well-settled construction that holds that the section is prospective in its operation and not limited to the time of the passage of the act in 1802. While we think, therefore, that the question of the citizenship of the respondent is a question of fact, we are clear that in the present case it would be improper for us to permit an information to be filed in order that the fact might be tried out before a jury. The petition is therefore denied, and the rule to show cause discharged, with costs.