## UNITED STATES ex rel. PORTADA v. DAY, Commissioner of Immigration, et al.

(District Court, S. D. New York.    December 7, 1926.)

**Aliens ⬞53—Plea of guilty to issuing check without funds under California law held to involve moral turpitude requiring deportation (Pen. Code Cal. § 476[a]).**

Plea of guilty to issuing check without sufficient funds under Pen. Code Cal. § 476(a), *held* conviction for act involving moral turpitude, requiring deportation, notwithstanding showing of apparent innocence, and that plea was made on advice of supposed attorney.

At Law.    Habeas corpus by the United States of America, on the relation of Ljubomir or Ljubmir or Louis Portada, against Benjamin M. Day, Commissioner of Immigration at the Port of New York, and others. Writ dismissed, and the relator remanded to the custody of the Commissioner of Immigration.

John M. Lyons, of New York City, for relator.

Emory R. Buckner, U. S. Atty., of New York City (Alvin McKinley Sylvester, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for respondents.

GODDARD, District Judge. The relator has been ordered deported to Italy on a warrant issued by the Second Assistant Secretary of Labor on December 21, 1925, which warrant charged:

"That he was a person likely to become a public charge at the time of his entry, and that he has been sentenced subsequent to May 1, 1917, to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, to wit, issuing check without sufficient funds in bank, committed within five years after his entry."

From the record it appears that the relator is 34 years of age, married, and has a wife and two children, who were born in the United States. He has been in this country all of the time since April 2, 1913, with the exception of nine months in 1921, when he returned to Italy to bring his mother here. In the summer of 1924 he went to California to purchase fruit; he being a small fruit dealer in New York City. In the course of his dealings while there, he delivered to a commission man a check for $100. A few days later this person telephoned to him that he lost the check and wanted another; the relator thereupon drew a second check without stopping payment on the first, which second check the commission man attempted to cash, but found that there was insufficient funds in the bank to meet it, the deficiency being some $7.50. In fairness to the relator, it should also be added that the record shows he did have sufficient funds in the bank to meet one check of $100, and it was upon the representation of the one to whom he had delivered it that it was lost that he drew another check, and the reason why there was not sufficient funds to meet the second check was because, as it subsequently appeared, his representation was false, as he had already collected on the first check. This same person caused the relator's arrest based on the charge that he had willfully delivered to him a check without having sufficient funds to meet it, which, under the laws of the state of California, is pro-

hibited. The relator retained one whom he thought was an attorney, but who turned out to be otherwise, and who advised him to plead guilty, assuring him that, if he did, he would be dealt lightly with. Apparently he was wrongfully advised, for, upon his plea of guilty, he received a sentence of one to four years in San Quentin. After serving a substantial time, he was paroled on August 5, 1926. It also appears that the man he retained on the representation that he was a lawyer, and upon whose advice he pleaded guilty, was subsequently arrested and convicted for embezzlement. The section in the Penal Code of California (section 476[a]), under which the relator pleaded guilty, reads as follows:

"Every person who, willfully, with intent to defraud, makes or draws, or utters, or delivers to another person, any check or draft on a bank, banker or depositary for the payment of money, knowing at the time of such making, drawing, uttering or delivery, that he has not sufficient funds in, or credit with, such bank, banker or depositary to meet such check or draft in full upon its presentation, is punishable by imprisonment in the county jail for not more than one year or in the state prison for not more than fourteen years."

It is unnecessary to discuss at length the cases cited by counsel because those cases turn upon the question whether the act charged against the persons carried with it a vicious intent or moral depravity, and the cases held that the mere having of narcotics or a pistol in one's possession, etc., did not necessarily indicate moral turpitude because the intention of committing an act of baseness or viciousness was absent or not proven. The difficulty in the case at bar is, however, that the relator has pleaded guilty to a willful intention to defraud. The first part of section 476(a), under which he pleaded, reads as follows: "Every person who willfully, with intent to defraud, makes or draws * * *". This court is bound by the record, and it is not open to question that such an act is one involving moral turpitude.

Although the result is harsh and unjust, I must, for I have no power to do otherwise, dismiss the writ and remand the relator to the custody of the Commissioner of Immigration. However, if I am placed in a position to do so, I will release the relator on bail so he may petition to the California authorities for relief from his present situation.