**UNITED STATES ex rel. MEYER v. DAY, Com'r of Immigration.**

No. 160.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Jac M. Wolff, of New York City, for appellant.

George Z. Medalie, U. S. Atty., of New York City (Morton Baum, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The relator, Max Meyer, was born in Austria, of Austrian parents. His father, Benjamin Meyer, came to the United States about 1898, and thereafter, in 1911, the son Max, then about 10 years of age, entered at the port of New York and has since remained in this country continuously. In April, 1929, a warrant of arrest in deportation proceedings was issued by the Secretary of Labor charging that subsequent to the passage of the Immigration Act of 1917 (39 Stat. 874) the relator had been twice sentenced to imprisonment for more than a year for the com-

mission of crimes involving moral turpitude. At a hearing before an immigration inspector, the relator swore that he was a citizen of Austria, but also stated that he believed his father had become a citizen of the United States. Apparently this was treated as a claim of citizenship, and was decided adversely to the alien, there being attached to the report of the hearing inspector a report by another inspector to the effect that the father's "first papers" had become invalidated and he had taken no subsequent steps toward naturalization. Deportation of the relator was recommended.

Thereupon a writ of habeas corpus was sued out in which it was alleged that Max Meyer was a citizen by virtue of his father's naturalization obtained about the year 1914. The petition was supported by affidavits of Max Meyer and his mother that the father had made statements to them that he was a citizen and had voted at elections. The affidavit of another person stated that the affiant had examined the records of the board of elections of the borough of Manhattan, Nineteenth assembly district, and that such records for 1916 disclosed the name of a Benjamin Meyer, 42 years of age, born in Austria, and naturalized July 10, 1912. Upon the petition, the supporting affidavits and the return by the respondent, an order was entered by the District Court to the effect that the relator was entitled to a judicial inquiry, that a further hearing should be had before the respondent, a transcript of the evidence taken on such hearing be furnished the relator, and the matter thereafter be brought before the court for a judicial inquiry as to the claims of the relator; deportation being stayed in the meantime. Such a hearing was had, at which Max Meyer, his mother, and his brother Isadore testified to declarations by the father that he was a citizen and had voted. The father himself was not available as a witness, as he had abandoned the family and disappeared five or six years ago. A transcript of this testimony was prepared, and it was stipulated by the parties that the same should be considered in lieu of oral testimony upon the judicial inquiry as to the relator's claim of citizenship. Subsequently, upon motion of the respondent and over objection by the relator, said previous order of the court was resettled so as to omit any reference to a judicial inquiry, the judge stating in a memorandum opinion that such references had been incorporated by mistake, since the relator had not made a sufficient showing to entitle him to a judicial inquiry, and that the further hearing before the respondent had been ordered in order to enable the relator, who was without financial means, to obtain without expense to himself additional facts for consideration by the court. After the order had been resettled, the case was heard, and apparently the stipulated testimony was considered, for the court said that there had not been submitted any evidence substantially different from that presented to Judge Caffey. The relator's claim of citizenship was held to be "frivolous" within the meaning of Ng Fung Ho v. White, 259 U. S. 276, 284, 42 S. Ct. 492, 66 L. Ed. 938, and the writ was accordingly dismissed, but deportation was stayed to allow an appeal.

If the relator is an alien, there can be no doubt that there is ground for his deportation under section 19 of the Immigration Act of 1917, 8 USCA § 155. In 1922 he was sentenced for a term of six to twelve years in the state prison for the crime of robbery in the first degree, to which he had pleaded guilty. The second sentence, likewise upon a plea of guilty, was imposed in July, 1928, for the crime of attempted grand larceny in the second degree, and was for a term of two and one-half years' imprisonment. There is no substance in the appellant's contention that there is a distinction in respect to moral turpitude between the commission of the substantive crime of grand larceny and an attempt to commit it. An attempt involves specific intent to do the substantive crime (N. Y. Penal Law [Consol. Laws N. Y. c. 40] § 2), and, if doing the latter discloses moral turpitude, so also does the attempt, for it is in the intent that moral turpitude inheres. See United States v. Warden, 45 F.(2d) 204, 205 (D. C. Pa.). Grand larceny in the second degree is defined in section 1296 of the Penal Law (Consol. Laws N. Y. c. 40) and larceny in section 1290. Larceny has always been held to involve moral turpitude, so far as we are advised. United States v. Kellogg, 58 App. D. C. 360, 71 A. L. R. 1210, 30 F.(2d) 984 (C. A. D. C.); Tillinghast v. Edmead, 31 F.(2d) 81 (C. C. A. 1); Bartos v. U. S. District Court, 19 F.(2d) 722, 724 (C. C. A. 8); Wilson v. Carr, 41 F.(2d) 704, 706 (C. C. A. 9). We cannot go behind the judgment of conviction to determine the precise circumstances of the crime for which the alien was sentenced. United States v. Day, 16 F.(2d) 328 (D. C. N. Y.).

The appellant's principal assertion of error is based upon the modification of the court's first order so as to deprive him of a judicial inquiry, with the result, it is alleged, that the government was relieved of the burden of proving alienage. Let it be assumed (without decision) that the order awarding a judicial inquiry should not have been changed, nevertheless, under the stipulation, the appellant was entitled to no more than a consideration by the court of the "annexed testimony." No further evidence was offered, and no suggestion is now made that he desired to offer anything more. Apparently the District Court considered the "annexed testimony," and certainly this court has done so. Hence the error in resettling the first order (if it was an error) was harmless.

Passing to a consideration of the evidence as on a judicial inquiry, it is apparent that dismissal of the writ was correct. That the government had the burden of proving alienage we concede. United States ex rel. Bilokumsky v. Tod, 263 U. S. 149, 153, 44 S. Ct. 54, 68 L. Ed. 221. But that burden was carried. Max Meyer was an alien when he entered the United States, and this status is presumed to have continued until the contrary is shown. Hauenstein v. Lynham, 100 U. S. 483, 25 L. Ed. 628; Ehrlich v. Weber, 114 Tenn. 711, 88, S. W. 188. The hearsay testimony of the father's naturalization is not sufficient to overcome this presumption. Naturalization is the result of a judgment by a court, and the best and usual proof of such fact is a copy of the court record. Boyd v. State of Nebraska, 143 U. S. 135, 181, 12 S. Ct. 375, 36 L. Ed. 103. No effort was made to prove it in this way. It is true, as stated in the case just mentioned, that, where no court record can be procured, evidence that a person having the requisite qualifications for citizenship did in fact and for a long time exercise the privileges of a citizen by voting and holding office has been held sufficient to warrant an inference that he had been naturalized. See, also, Hogan v. Kurtz, 94 U. S. 773, 778, 24 L. Ed. 317; Conover v. Old, 80 N. J. Law, 535, 77 A. 1070. But ordinarily parol evidence is not admissible to prove naturalization. Green v. Salas, 31 F. 106 (C. C. Ga.); Wood v. Aspen M. & S. Co., 36 F. 25 (C. C. Colo.); Slade v. Minor, 22 Fed. Cas. page 317, No. 12937; cf. Cunard S. S. Co. v. Sullivan, 6 F.(2d) 383 (C. C. A. 2). In any event in the case at bar the evidence was insufficient. It consisted of testimony by the appellant

and his brother of statements which they claim to remember hearing their father make many years ago when they were young boys. The mother's testimony to the same effect is contradicted by the story Inspector Finch obtained from her to the effect that the father's first papers had become invalidated and his naturalization was never completed. On this record, the writ was correctly dismissed.

Order affirmed.