ADRIÁN CABALLERO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, PONCE PART, HÉCTOR RUIZ SOMOHANO, JUDGE, Respondent.

No. 2100. Submitted December 11, 1957.—Decided April 28, 1960.

*S. L. Lagarde Garcés* for petitioner. *Hiram R. Cancio, Secretary of Justice (J. B. Fernández Badillo, Acting Secretary of Justice, Rafael L. Ydrach Yordán* and *Ramón Olivo Nieves, Fiscal and Special Fiscal of the Supreme Court,* respectively, on the brief)*, for The People.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On March 30, 1953 a special prosecuting attorney filed a complaint in the District Court, Ponce Part,[1] against petitioner Adrián Caballero charging him with a violation of Act No. 26 approved on April 25, 1934, which punishes the issue or delivery of checks without sufficient funds or credit for the payment thereof. 33 L.P.R.A. §§ 1851–56.

The trial was held on July 7, 1953. The People was represented by a district attorney and Caballero by his attorney. As defenses, the latter adduced that: (a) It was not his intent to defraud Gerardino when the check was issued and mailed to him; (b) he issued the check to pay for a past consideration; (c) it was not presented to the drawee bank within a reasonable period, and (d) even when he was required or advised by the drawee to pay, as well as when the complaint was filed against him, he was under a bankruptcy proceeding and barred from making any payments to settle his debts outside of said proceeding.

---

[1] The check was issued in Caguas, apparently on April 3, 1952, on a bank of that city and it was sent from there by mail to the residence of its drawee, Julio E. Gerardino, Yauco, P. R. It was presented for payment at said bank of Caguas, which refused to pay it because of lack of funds. The ordinary jurisdiction of the offense was in the Municipal Court, Caguas Part, until July 25, 1952, and then in the District Court, Caguas Part, as in such cases the offense is understood to be committed in the place from which the check was mailed. *People* v. *Megladdery,* 105 P.2d 385, 40 C.A.2d 643 (1940); Code of Criminal Procedure, § 8; see Rafael Hernández Colón, *Procedimiento Criminal Bajo un Sistema Unificado de Cortes, Revista Jurídica de la Universidad de Puerto Rico,* 335, 344 *et seq.,* vol. *XXVII,* 1957–58.

The oral evidence of The People consisted of Gerardino's testimony; the documentary evidence, of the original of the check together with a slip from the Banco de Ponce, Caguas Branch, which indicates the reason why the payment was refused, and a letter dated December 5, 1952 requiring Caballero to pay the check.

After Gerardino had testified, the following was stipulated:

". . . it is stipulated by Mr. Lagarde and District Attorney Veray, that check No. 45 *was duly presented to the Banco de Ponce,* Caguas Branch, and that this check on May 5, 1952, sic, and *the drawer did not have sufficient funds for which reason it could not be paid* and that it has not been paid at any other time by Adrián Caballero, the defendant in this case, that the check has not been honored; *and that Adrián Caballero at this date nor at any later date has had sufficient funds* to cover that check."[2]   (Emphasis ours.)

The oral evidence of the defense consisted of the testimony of the defendant Adrián Caballero. The documentary evidence, of a copy of a letter dated March 25, 1952, the

---

[2] The text of the check reads thus:

"April 3, 1952—No. 45
Banco de Ponce
Caguas, Puerto Rico

Pay to the order of Julio E. Gerardino............... $563.65
Five-hundred sixty-three and 65/100...................Dollars
(Sgd.)  Adrián Caballero"

On its left margin it states: "Balance of Invoice No. 146–15." On the back it was a rubber stamp which reads: "For deposit on the account of Julio E. Gerardino (J. E. Gerardino) Yauco, P. R." It also has four rubber stamps of the Banco Crédito y Ahorro Ponceño, Yauco Branch, dated respectively April 4, 10, 10 and 30, 1952, and across each one of these four stamps there are four other rubber stamps which read: "Endorsement canceled."

The slip attached to the check has a stamp which reads: "Banco de Ponce—Caguas Branch—Received May 5, 1952." In addition, typewritten on it are the words: "REASON FOR RETURNING THIS CHECK—WE ARE RETURNING YOUR REMITTANCE BECAUSE THE ONLY CHECK ATTACHED *HAS NO FUNDS.*" Signed: "S. García."—(Emphasis ours.)

invoice, a carbon copy of a letter signed by Isidoro Delgado, and a certificate issued by the referee in bankruptcy, W. H. Beckerleg.

On that evidence, which in some essential particulars was conflicting, together with the briefs of both parties, the case was submitted to the District Court for a decision. The latter settled the conflict against defendant and rendered judgment on September 16, 1953, finding defendant guilty and imposed on him a fine of $1,127.30, or in default thereof, imprisonment for one day for each dollar he failed to pay, not exceeding 90 days.

Caballero appealed to the Superior Court, Ponce Part, which based on a reasoned opinion affirmed the judgment appealed from. In said opinion, the following summary of the evidence presented before the District Court is made:

"The defendant bought some material from Julio Gerardino, in the town of Yauco, on or about March 6, 1952; there was no relationship of any kind between the defendant and Gerardino, and for the first time they entered into this commercial transaction. When the defendant went to pay for the merchandise, he searched his pockets and said he could not find a check, he looked for it in the glove compartment of his car but he could not find it. Then defendant told Gerardino he would send him 'the small check' from Caguas. The prosecuting party delivered the merchandise to take with him and to send the check later because he was not going to make the sale on credit without knowing him. A few days went by and defendant sent him a check as payment for the merchandise bought for the amount of $563.65 (Exh. 1 of The People). Gerardino deposited the check in the bank and it was returned because defendant did not have sufficient funds. On several subsequent occasions the prosecuting party again deposited it and it was returned for the same reason. The check referred to is dated April 3, 1952, and it is No. 45 drawn on the Banco de Ponce, Caguas Branch. Finally, about 8 months later, after the bank had returned the check to the plaintiff several times, Gerardino consulted his attorney and turned the case over to him. On December 5, 1952, prosecuting party required the defendant to pay by a registered letter with return receipt which defendant never answered, nor did he pay

the amount of the check. Defendant received this letter. About 8 months after the check had been issued by defendant, that is, in the month of November, 1952, the latter filed a petition for voluntary bankruptcy before the Federal Court, submitting to a composition. Among the creditors covered by the composition is plaintiff Julio E. Gerardino, for the amount of the check at issue. On the date in which the criminal action was filed against defendant, that is, on March 30, 1953, defendant had already been forced into voluntary bankruptcy proceedings in the Federal Court."

At the request of Caballero, we issued a writ of certiorari to review the judgment of the Superior Court.

In his brief he maintains that the respondent court erred in finding him guilty because: (1) the check referred to in the complaint was not presented for payment within a reasonable time, pursuant to § 187 of the Uniform Negotiable Instruments Act, approved in 1930; (2) there was no evidence presented to prove that defendant defrauded drawee, nor that he did not have an established credit with the drawee bank for the payment of the check; and (3) and (4) because at the commencement of the criminal prosecution defendant was forced into a bankruptcy proceeding in which "a composition had been issued including Mr. Gerardino as a creditor."

The first error assigned was not committed. The check in question appears drawn and mailed to Julio E. Gerardino, on April 3, 1952. The latter deposited it on the 4th, 10th ,and 30th of the same month of 1952 in the Banco Crédito y Ahorro Ponceño, Yauco Branch, to have it credited to his account but it was returned by that bank without crediting it. It was presented for payment on May 5, 1952 to the very Banco de Ponce, Caguas Branch, on which it had been drawn. This bank then returned it because of lack of sufficient funds for its payment. Section 187 of the Uniform Negotiable Instruments Act—19 L.P.R.A. § 363—reads thus: "A check *must be presented for payment within a reasonable time after its issue* or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

This section does not apply in any way to the present criminal case filed against petitioner under a penal law which punishes the act of issuing and delivering a check with the intent to defraud another person, the drawer knowing, at the time of doing so, that he has not sufficient funds or established credits in the bank upon which he draws it, for the payment in full of the check upon its presentation. The gist of the crime to issue checks without funds or credits is the intent to defraud. *Valentín* v. *Warden*, 80 P.R.R. 450, 463 (1958); *People* v. *Cuevas*, 54 P.R.R. 286, 289 (1939); *People* v. *Payton*, 112 C.A.2d 648; 246 P.2d 978 (1952). The only thing that relieves the drawer of criminal liability is the payment of the check *within the fixed period* required for payment by § 4 of the aforesaid Act No. 26. Of course, we have well in mind the situation in which a check has not been paid due solely to the fault or omission of the person in whose favor it is issued or endorsed, or where the latter has been warned or knows of the lack or insufficiency of funds or credits, or where it is due to acts or omissions of the drawee bank and such cases in which the concurring circumstances do not reveal any intent to defraud. In such cases the penal statute may appear to be technically violated, but there is no ground to charge the drawer with fraud. *Cf. People* v. *Cuevas, supra;* Per Curiam, *Pueblo* v. *Loubriel*, 55 *D.P.R.* 1004 (1939). However, the situation in the present case does not fall within the exception. The check was presented for payment on May 5, 1952, at the drawee bank, that is, 31 days after it was received by the person in whose favor it was drawn the preceding April 3. On the 4th, 10th, and 30th of the same month of April the latter tried to have it credited to his account in another bank. The reason why he did not succeed is obvious: Adrián Caballero, when he issued the check on April 3, nor on April 4, 10, and 30, 1952, had not sufficient funds in the Caguas bank to meet payment. This is the conclusion from the stipulation previously copied and from his own testimony in court.

■ It is true that the personal demand for the payment was made by the drawee of the check on December 5, 1952, some six months after the payment had been refused by the drawee bank. But Act No. 26 does not fix any term for this demand. This delay in the demand rather benefited Adrián Caballero himself, who then had an extended period of time for the payment of the check.

■ We do not see how the aforesaid § 187 can be rationally applied in the case. The main premises on which this provision may be invoked require that the drawer have sufficient funds when issuing or delivering the check and the reason why it is not paid must be the delay of the drawee in presenting it for payment. As stipulated, the check *was duly presented for its payment* and Adrián Caballero *never had funds for its payment.* The error assigned, under these conditions, is devoid of merit. The cases of *Alvarez* v. *National City Bank of N. Y.*, 46 P.R.R. 82 (1934) and *San Juan Dock Co.* v. *Treasurer*, 52 P.R.R. 89 (1937) do not apply either.

■■ The second error assigned was not committed. The evidence presented and believed by the trial court suffices to show the existence of the intent to defraud.

When Caballero issued the check, on the left corner he wrote: "Balance of Invoice 146–15." He accepted that "on the 3rd [of April 1952] he did not have sufficient funds" to pay for the check nor at any subsequent date. As argued by The People in its brief before us "he, better than anyone else, was aware of this situation. The act of searching in his pockets and in the car was a mere trick to win plaintiff's confidence. If he had acted in good faith there is no doubt that he would have sent the money immediately but instead he waited a few days to act as he did."

To defraud, pursuant to California authorities, means to deprive a person of a right, either by procuring something by deception or artifice or by appropriating something wrong-

fully. *People* v. *Griffith,* 120 C.A.2d 873 (1924); 262 P.2d 355; *People* v. *Wilkins,* 67 C. A. 758 (1924); 228 Pac. 367. In the case of *People* v. *Cuevas, supra* at p. 291, it was said:

"Fraud, synonymous with deceit, consists in a false representation, by words or by acts, of material facts, by which a reasonably discreet and confident person is induced to act to his own prejudice; or in the suppression of material facts which a person is legally bound to reveal to another. See: 1 Story Equity Jur. sec. 186, and C. 6 ; Bouvier's Law Dictionary, vol. 1, p. 843."

The court did not give credence to defendant's testimony when he stated that together with the check he had also sent to Gerardino a letter dated March 25, 1952, which in part read thus: "The check I am sending you is dated April 3 because I do not want to have my account too thin at the end of the month, a favor for which I shall be sincerely grateful." Gerardino stated that he had never received the original of that letter, and yet, he received the check by ordinary mail.

Defendant's allegation that he bought the merchandise on credit and that the check was issued to satisfy a pre-existing debt is devoid of merits. If it was on credit, why did Caballero have "to make believe" (term used by Gerardino) he was looking in his pockets and in the glove compartment of his car for a check to pay for the merchandise he was trying "to buy" from an unknown merchant and with whom he had never had any connection? What persuaded Gerardino to give him the merchandise worth $563.65, even if it was a cash sale, was the deceitful promise of paying with a check, together with the honeyed phrase "Gosh, I am going to send you the check from Caguas, because I like that gabardine you have there too and I am also going to buy it." The result was evident: Caballero took the merchandise for the amount of $563.65 plus the profit he would obtain from it in his business; in return, Gerardino received a small paper, eight inches long by three inches wide, with his name and the presumptious

phrase "Balance of Invoice No. 146–15," as a token of an unfortunate experience with a skillful stranger.[3]

If such circumstances were not sufficient to prove the intent to defraud by issuing a check in payment of merchandise sold cash and with full knowledge of the lack of funds or sufficient credits to be honored at its presentation at the bank, that intent was proved as a matter of law when Caballero did not pay the amount of the check within the term of twenty days granted to him by means of the notice or demand made upon him in a registered letter on December 5, 1952, since § 5 of Act No. 26, in its relevant part reads thus:

"The failure of the person who drew, signed, endorsed, or delivered said check, draft, letter of credit, or order, to make

---

[3] Our statute is silent as to the payment of past considerations with checks without funds. It makes no distinction between past and present obligations or those contracted at the moment the check is issued. The gist of the crime, as we have said before, is the intent to defraud. All we have decided as to this crime is that if the person who receives the check knows that the drawer does not have funds to pay it, the intent to defraud can not exist, and that in order to determine the existence of the psychological element of the crime ,that is, the intent to defraud in order to obtain illicit profit, the concurring circumstances in each case must be taken into consideration.—See the afore-cited cases of *Cuevas* and *Loubriel.*—As to this point and also referring to post-dated checks, it is evident that a conflict exists in the American case law based on the difference in language of the different statutes on the matter.—*Cf. State* v. *Goerdes,* 48 N. J. Super. 293 (1957), 137 A.2d 100, 103, *Phillips* v. *State,* 24 Ala. App. 456, 136 So. 480; *State* v. *Lowenstein,* 109 Ohio St. 393, 142 N. E. 897, 35 A.L.R. 361; *People* v. *Nibur,* 238 App. Div. 233, 264 N.Y.S. 148, and the annotation published in 59 A.L.R.2d 1159. In the aforesaid *Goerdes* case, citing *State* v. *Lowenstein, supra,* it was stated:

"When in the payment of a past consideration a man gives a check, if he gives the check knowing that he has not funds on deposit to cover it, why does he so act? He so acts because he expects to gain an advantage. He expects perhaps to deceive persons who are pressing for payment; he expects them to think that he has paid the old debt when [really] he has not paid.

" .       .       .       .       .       .       .

"It was the evident purpose of this statute to prevent the negotiation of false checks drawn on accounts which did not exist, or were insufficient to pay the checks drawn. . . . In order to protect the credit intercourse of the community this statute was enacted creating a new crime and providing new and distinct rules of evidence."

payment after said notice, *shall be prima facie evidence of the intent to defraud."* (Emphasis ours.)

Defendant did not present any convincing evidence to override this presumption. The fact that he declared himself in voluntary bankruptcy after the bank had refused to pay the check indicating in his list of uninsured creditors that Gerardino's address was "Juncos" when he knew it was Yauco, and the fact that he sold his establishment after receiving the notice (see Exhibits III and IV of the defendant), are additional indications of the existence of the intent to defraud. *Cf. State* v. *Price,* 97 S. E. 582, 5 A.L.R. 1247, 1251, W. Va. (1918).

■ Petitioner also alleges that the trial court erred in finding him guilty "when there was no evidence to prove that defendant, besides not having sufficient funds in the bank, also lacked credit with the bank to pay the check."

Again we disagree on this point. It is true that it was not proved by direct evidence that no established credit to pay for the check existed. But it is not less true that after considering and analyzing the evidence presented by both parties as a whole, the absence or lack of established or open credit for the payment was proved beyond all reasonable doubt through sufficient circumstantial or indirect evidence.[4]

Section 3 of Act No. 26 provides that the word "credit" shall be interpreted in the sense of an arrangement or under-

---

[4] Since the element of lack of sufficient established credit for the payment of the check in full appears incorporated in the definition of the crime inseparably, not only the lack of funds but also the lack of credit should be alleged in every information for the violation of Act No. 26.— *Commonwealth* v. *Bandy,* 291 Ky. 721, 165 S.W.2d 337 (1942); *Daily* v. *Commonwealth,* 248 S.W.2d 425, Ky. (1952); *People* v. *Markos,* 303 P.2d 363, 365, C.D.C.A. (1956).—Although in the information filed in the present case the district attorney did not make any specific allegation in that respect, yet, he stated therein facts which prove the lack of credit when he alleges that the check was not paid because of lack of funds, since § 2 of that Act provides that when the drawee bank refuses to pay for insufficiency of funds or lack of credit, it "shall constitute prima facie evidence of the knowledge of the drawer of the insufficiency of the funds or of the lack of credit."

standing with the bank or depositary drawn upon, for the payment of said check, draft, letter of credit, or order. This definition establishes a clear distinction between the terms funds and credits. The former refers to deposited sums of money; the latter to an agreement or contract compelling the bank to honor the checks, drafts, letters of credit, or orders of payment drawn upon it even when the drawer has no funds in the bank.

There is no dispute as to the fact that the Banco de Ponce, Caguas Branch, refused to pay the check. Nor that Caballero did not have sufficient funds in said bank to meet payment on the date it was issued, April 3, 1952, nor at any subsequent time.

In the letter which, according to Caballero, he wrote Gerardino, he only states that he does not want to have "the account too thin at the end of the month." He does not mention that he has made any arrangement, agreement or contract with the bank to pay the check. In the aforesaid stipulation the parties set forth that the check "could not be paid" and that the same "has not been honored." It was proved that the bank returned it several times without paying it. When the defendant testified in his defense, he did not allege the existence of any "arrangement, or understanding with the bank for the payment of said check." Upon testifying on his economic situation he stated that it was such that he had proposed to Gerardino he would pay the amount of the check by installments. From the cross-examination made by the district attorney we quote the following:

"District Attorney: When you issued that check did you have sufficient funds in the bank?

"Witness: I had an account with the bank.

"District Attorney: Did you know whether your account covered the check?

"Witness: When the check was sent to him it was stated very clearly in the letter that the account was thin . . . so that he would hold the check until . . . the 3rd, that is the copy of the

letter sent to him ·with the check . . . he was there at my business. in Caguas, and I still waited to send it to see if I would **not** have to . . .

".     .     .     .     .     .     .     .

"District Attorney: And then, you paid an invoice with a. check without funds?

"Witness: Well, at the time it was issued."

That was the moment to have shown, in his defense, that in spite of the fact that he had no funds, he had an established credit with the bank to pay for that check. Why did he not tell Gerardino when he was visited by him in the month. of March that the check he was going to draw would be paid by the bank pursuant to an arrangement or understanding with the bank? His testimony showed clearly that all he had in the bank was a "very thin account."

We cannot presume that the bank refused to honor the check notwithstanding the existence of an arrangement or understanding with the defendant to pay it upon presentation. We have to infer logically that if on several occasions the bank refused to pay the check—as testified by the manager of the drawee bank and whom defendant did not question about the existence of any credit with that bank—it was because defendant had neither funds nor established credits. there to pay it. Neither can it be presumed that in the ordinary course of transactions, a bank that has bound itself to pay a certain check, according to previous arrangement or understanding, should capriciously violate that arrangement. or understanding again and again unfulfilling its obligation to honor it. It is only logical to infer that if it refused to pay the check it was because of the lack of funds and credits.

▅▅▅▅ Petitioner argues his third and fourth assignments jointly. He urges that he was found guilty erroneously because that criminal action commenced after the bankruptcy proceedings had begun and after "a composition. had been issued including Gerardino as creditor."

Petitioner's Exhibit IV proves that he *voluntarily* went to the Bankruptcy Court searching for an arrangement with his creditors under Chapter XI of the Bankruptcy Act, presenting his request on December 4, 1952, that is, one day before the written demand was served upon him for the payment of the check; that among his noninsured creditors he included *"J. E. Gerardino of Juncos, P. R., for the amount of $563.65,"* that the arrangement proposed in the proceeding was accepted by a majority in number and quantity of his creditors and confirmed on March 25, 1953, and that he made his first deposit in accordance with the terms of the arrangement he proposed. In the criminal prosecution it was not established that Gerardino had been notified of the bankruptcy proceeding nor that he intervened in the same in any way. When petitioner's counsel asked him if he had any knowledge of the bankruptcy proceeding he answered that he knew "nothing about that" and that he found out when he was informed by his attorney.

The complaint for having issued the check without funds was filed on March 30, 1953. Petitioner's theory is that "the existence of an order, plan, adjustment, or arrangement which the Bankruptcy Act calls 'composition' bars the action filed and which gave rise to the information or complaint."

The Superior Court passed on this same issue. Its opinion seems to us very appropriate in deciding the question in the following terms:

"In our opinion the trial court did not err in finding defendant guilty while he was subjected to a bankruptcy proceeding and after a composition was executed including Gerardino as creditor. The transaction performed by defendant and the prosecuting witness which gave rise to the criminal action now before us took place long before defendant submitted to the voluntary bankruptcy proceeding even if the crime established by Act No. 26, *supra,* was perfected when defendant was already under the jurisdiction of bankruptcy of the Federal Court. Nonetheless, bankruptcy, and its juridical effects, does not establish the defense in this criminal proceeding. The rule invoked

by petitioner as to the binding nature of the terms of the composition for the debtor and his creditors, is applicable only to obligations contracted by the debtor in the course of his transactions and not to criminal acts performed by the debtor with intent to defraud a person. In this latter case, the prejudiced party being the People of Puerto Rico and not Gerardino, the State could bring a criminal action independently of the obligations contracted by defendant and his creditors in the 'composition' held in the Federal Court. A defendant cannot seek the protection of a 'composition' to avoid a criminal proceeding filed by the People of Puerto Rico (Commonwealth) even if the approved composition could affect the judgment, because the local law provides thus 'when the violation of a right admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other.' Section 2, Code of Civil Procedure. It has likewise been decided that the immunity of the bankrupt from arrest and prison extends only to civil procedures for debts which may be dischargeable in a bankruptcy proceeding, 8 C.J.S. § 492 at 1361, and not for debts created by fraud, which can be claimed by the creditor even after bankrupt's release. 11 U.S.C.A. § 35 at 306."

Petitioner cites as an authority only the case of *Ex parte Myers*, 237 Pac. 1026. This is a decision of the Supreme Court of Kansas, dated July 11, 1925. It is a habeas corpus proceeding. Petitioner Myers was bound over in a criminal prosecution authorized by a statute of that state which punishes the issuance of checks without funds and which, as to the definition of the crime, it is very similar to ours. But the Kansas statute provides that defendant shall have a right to have the action abated if at any moment before the trial he alleges and proves that he had an account in the drawee bank thirty days prior to the time said check was delivered and that the check was drawn without intent to defraud, and also, if he pays into the court the amount of such check, and the costs. In his petition Myers argued that he had a right to be released as in the preliminary hearing of the criminal prosecution he had shown the existence of an account in the drawee bank and that he had delivered the check to his payee in pay-

ment of apples, with the understanding that he would deposit the funds in the bank when the apples were sold, but he could not do so because of very cold weather two thirds of the carload of apples were frozen, and that he had also shown that four months later he had been adjudged bankrupt in a voluntary bankruptcy proceeding in which he was granted a discharge equal to the payment in full of the check, pursuant to a local law.

The Supreme Court of Kansas refused to release Myers because the magistrate who held the preliminary hearing was not compelled to give credence to his defense and because it should primarily be held before a jury in a district court and not before the Supreme Court of the state. With respecto to the question of the legal effect of the bankruptcy proceeding on the criminal prosecution, at the request of both parties in the habeas corpus proceeding, the Supreme Court of Kansas, after it set forth that in that proceeding the holder of the check filed his "proof of claim" together with the check without funds drawn by Myers and that the referee in bankruptcy had allowed the claim, it issued a declaratory judgment setting forth that assuming the regularity of the bankruptcy proceeding and the absence of any issue of fraud therein which might prevent the bankrupt's discharge, the legal effect of such discharge pursuant to the law and the state authorities was that of payment of the debt referred to in the check and that petitioner Myers could rely on such discharge as an equivalent of payment or deposit in court as provided in the aforesaid statute of the state on checks without funds.

However, in the case of *State* v. *Price*, 97 S. E. 582 (W. Va. 1918) ; 95 A.L.R. 501, cited by the district attorney, and in the more recent one of *State* v. *Goerdes, supra*, decided by New Jersey on December 20, 1957, defendants were finally convicted notwithstanding the fact that they had been under the protection of the Bankruptcy Act. In the first case—of involuntary bankruptcy—it was decided that the fact that defendant is at the verge of bankruptcy and subsequently

forced into bankruptcy rather tends to strengthen the presumption of the existence of fraudulent intent when the check was issued, for nobody better than he knows his own condition.

According to the *Myers* case it is up to the defendant in these cases to prove that before the bankruptcy court the allegation of fraud was not raised against the request of discharge and that the obligation to pay the debt referred to in the check was discharged in the bankruptcy proceeding. This proceeding does not produce an absolute legal incapacity of the bankrupt for the payment of the debt to one of his creditors. What constitutes the preference in the payment, and what the law prohibits is that the bankrupt pay with the same assets which are transferred or should be transferred to the bankrupt's estate. He continues with the capacity to obtain loans or credit specifically to enable him to satisfy the claim of a designated creditor. Collier's Bankruptcy Manual, § 60.08.

Debts or claims created by actual and positive fraud of the bankrupt involving moral turpitude and malicious intent are not subject to discharge, although provable, and they remain subsistent after the suspension of the proceedings, and although the bankrupt is discharged, this being one of the exceptions established by the Bankruptcy Act in its § 17.[5] *De Jesús* v. *District Court*, 44 P.R.R. 133, 138 (1932); *cf. Rivera* v. *Gallardo, Treasurer*, 40 P.R.R. 781, 784 (1930).

In *U. S.* v. *Day*, 16 F.2d 328, it was decided that a check issued without funds constitutes a crime involving moral turpitude. Our statute structured the criminal act taking the

---

[5] This section in its relevant part reads thus:

"17. Debts not affected by a discharge

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as: (1) . . . (2) are liabilities for obtaining money or property by false pretenses or false representations . . . (3) . . . (4) or were created by his fraud, embezzlement . . . ."

intent to defraud as its principal element.[6]   California, in its
Penal Code, § 476a, punishes that crime with the penalty of
imprisonment for not more than 14 years and not less than
one year when the amount of the false check exceeds $50.
The American doctrine and case law classifies it in Cheats,
Frauds and False Pretenses.   See 2 Russel, Crime (11th ed.
1958) 1332; Fricke, California Criminal Law (7th ed. 1959)
335–343; 2 Wharton's Criminal Law (12th ed. 1959) § 1428;
2 Burdick, The Law of Crime 497, 22 Am. Jur., *False Pre-
tenses*, §§ 56–72; 37 C.J.S., *Fraud*, § 9.

In the case of *Guernsey-Newton Co.* v. *Napier*, of the Su-
preme Court of Washington, 275 Pac. 724, 1924, it was de-
cided that the indorser of a worthless check had a cause of
action to claim its amount although drawer had submitted to a
bankruptcy proceeding in which he was discharged as it was
a liability contracted through fraud and false pretense and
which had no discharge in the bankruptcy proceeding as ex-
pressly provided in the Bankruptcy Act.   To the same effect
see *Donahue* v. *Conley*, D.C.A. Cal. 258 Pac. 985 (1927).

We are therefore of the opinion that the respondent court
did not commit the errors assigned, the writ should be dis-
charged, and the judgment appealed from sustained.

---

[6] Its § 1 reads thus:

"Any person who, for the purpose of defrauding another, makes,
extends, endorses, or delivers a check, draft, letter of credit, or order to
pay money against any bank or other depositary, knowing at the time of
doing so that the maker or drawer has not sufficient funds or credit in said
bank or depositary for the total payment of the check, draft, letter of
credit, or order upon the presentation thereof, shall be guilty of a mis-
demeanor and upon conviction, shall be punished by a fine that shall not
be less than twice the amount of the said check, draft, letter of credit or
order, or by imprisonment in jail for one day for each dollar or fraction
thereof he fails to pay, or by both penalties, in the discretion of the
court."