## MATTER OF BADER

### In Deportation Proceedings

### A-20871632

*Decided by Board September 24, 1980*

(1) Denial of a request for change of venue to permit presentation of expert witness testimony not error where there has been no showing of prejudice by affidavit or offer of proof to establish the witness' identity, qualifications, and proposed testimony.

(2) A foreign document to be admissible requires both a certification by a foreign official having legal custody of the document, as to its accuracy, and a certification by a United States Foreign Service officer stationed in the foreign country, as to the genuineness of the signature and official position of the certifying foreign official. *See* 8 C.F.R. 287.6.

(3) Failure to certify a foreign record of conviction under 8 C.F.R. 287.6 will not require setting aside the immigration judge's finding that alien was convicted where the alien has not repudiated his sworn admissions that he was so convicted nor challenged the accuracy of the facts contained in the foreign record of conviction.

(4) Prejudgment by the immigration judge is not established absent a showing that the alien was refused the opportunity to present evidence or that the immigration judge declined to consider the evidence presented.

(5) A conviction to defraud the public of money or valuable security under section 338(1) of the Canadian Criminal Code, which requires proof of intent to defraud as a necessary element of the offense, is a crime involving moral turpitude.

(6) A conspiracy to commit an offense involves moral turpitude when the underlying substantive offense is a crime involving moral turpitude.

(7) Alien's conviction of conspiracy to commit a crime involving moral turpitude established deportability under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(1), as alien excludable at time of entry under section 212(a)(9) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(9).

CHARGE:

Order:  Act of 1952—Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under sec. 212(a)(9)—Convicted of a crime involving moral turpitude

ON BEHALF OF RESPONDENT:  Ira J. Kurzban, Esquire
444 Brickell Avenue, Suite 1011
Miami, Florida 33131

BY·  Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members

dred dollars; or (b) is guilty

(i) of an indictable offence and is liable to imprisonment for two years, or

(ii) of an offence punishable on summary conviction, where the value of the property of which the public or any person is defrauded does not exceed two hundred dollars. 1974 75-76, c. 93, s. 32.

(2) Every one who, by deceit, falsehood or other fraudulent means, whether or not it is a false pretence within the meaning of this Act, with intent to defraud, affects the public market price of stocks, shares, merchandise or anything that is offered for sale to the public, is guilty of an indictable offence and is liable to imprisonment for ten years. 1953-54, c. 51, s. 323.

The immigration judge found the respondent's conviction was for a crime involving moral turpitude. Respondent argues that a conviction under section 338(1) does not necessarily require proof of criminal intent or intent to defraud and is therefore not a crime involving moral turpitude. He points to the language of section 338(1), not requiring "false pretence" as a necessary element of the offence, and the inclusion of "intent to defraud" as a necessary element in sections 338(2) and 319(1) (the crime of false pretence)[2] to support his position. He also cites several Canadian judicial decisions, suggesting that they demonstrate criminal intent or intent to defraud is not required for a conviction under section 338(1).

Fraud has, as a general rule, been held to involve moral turpitude, *Jordan v. DeGeorge*, 341 U.S. 223 (1951)(defrauding the United States of taxes on distilled spirits); *Mercer v. Lence*, 96 F.2d 122 (10 Cir. 1938)(defrauding a person of a large sum of money); *U.S. ex rel. Berlandi v. Reimer*, 30 F.Supp. 767 (S.D.N.Y. 1939), *aff'd*, 113 F.2d 429 (2 Cir. 1940) (defrauding the United States of taxes on distilled spirits); *U.S. ex rel. Amato v. Commissioner of Immigration, Ellis Island, New York Harbor*, 18 F.Supp. 480 (S.D.N.Y. 1937) (petty larceny); *U.S. ex rel. Portada v. Day*, 16 F.2d 328 (S.D.N.Y. 1926) (issuing of checks without sufficient funds, with intent to defraud); *Ponzi v. Ward*, 7 F.Supp. 736 (D. Mass. 1934) (use of the mails to defraud); *Matter of Flores*, Interim Decision 2752 (BIA 1980) (uttering and selling false or counterfeit paper relating to registry of aliens); *Matter of McNaughton*, 16 I&N Dec. 569 (BIA 1978) (fraudulently affecting public market price of

---

[2] Section 319(1) provides in relevant part:

319. (1) A false pretence is a representation of a matter of fact either present or past, made by words or otherwise, that is known by the person who makes it to be false and that is made with a fraudulent intent to induce the person to whom it is made to act upon it. 1953-54, c. 51, s. 303.

stocks); *Matter of Martinez*, I&N Dec. 336 (BIA 1977) (passing counterfeit money); *Matter of P—*, 3 I&N Dec. 56 (CO 1947; BIA 1948) (obtaining money by false pretenses); *Matter of F—*, 2 I&N Dec. 754 (CO 1946; BIA 1947) (defrauding the government of customs duties). From these cases it can be seen that whenever a crime has involved intent to defraud, it has been found to involve moral turpitude. The Court in *DeGeorge*, supra, stated:

> In view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude.

341 U.S. at 229.

> Whatever else the phrase "crime involving moral turpitude" may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. . . . Fraud is the touchstone by which this case should be judged. The phrase "crime involving moral turpitude" has without exception been construed to embrance fraudulent conduct.

341 U.S. at 232.

Intent to defraud is a required element to obtain a conviction under section 338(1). *Regina v. Zaritec Industries Ltd. And 3 Others*, 24 C.C.C.(2d) 180 (Alberta Supreme Court 1975). The term "defraud" means deliberate dishonest acts resulting in the deprivation or loss of another's proprietary right. *Regina v. Olan, Hudson and Hartnett*, 41 C.C.C.(2d) 145 (Supreme Court of Canada 1978).

The respondent was convicted of a conspiracy (section 423(1)(d)) to defraud the public (section 338(1)). A conspiracy to commit an offense involves moral turpitude when the underlying substantive offense is a crime involving moral turpitude. *See Jordan v. DeGeorge*, *supra*; *Matter of Flores*, *supra*; *Matter of McNaughton*, *supra*; *Matter of M—*, 8 I&N Dec. 535 (BIA 1960); *Matter of C—*, 7 I&N Dec. 114 (BIA 1956); *Matter of S—*, 2 I&N Dec. 225 (BIA 1944).

We conclude that a conviction under section 338(1) is for a crime involving moral turpitude and that respondent's conviction for conspiracy to violate section 338(1) involves a crime of moral turpitude under the above authority. We further conclude that respondent's deportability under section 241(a)(1) of the Act has been established by clear, convincing, and unequivocal evidence.

The decision of the immigration judge was correct. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.

MATTER OF APHRODITE INVESTMENTS LIMITED

In Visa Petition Proceedings

PHO-N-2277

*Decided by Commissioner August 22, 1980*

A corporation is a separate entity from its stockholders for the purposes of qualifying an alien beneficiary as an intra-company transferee under section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L). *Cf. Matter of M—*, 8 I&N Dec. 24 (BIA 1958; A.G. 1958).

ON BEHALF OF PETITIONER: Michael Margrave, Esquire
Nancy-Jo Merritt, Esquire
Pearlstein & Margrave
2100 Valley Bank Center
Phoenix, Arizona 85073

This case is before the Commissioner on certification as directed. The petitioner is seeking to classify the beneficiary as an intra-company transferee (L-1) as defined in section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L), as amended. The petition was denied by the District Director of this Service in Phoenix. Appeal was taken to the Regional Commissioner, Western Region. The Regional Commissioner upheld the decision of the District Director and dismissed the appeal.

Aphrodite Investments is an investment holding company head quartered in London, England. The company is owned by three brothers, each of whom possesses approximately a one-third share of the company. Aphrodite Investments has created two subsidiary companies located in Arizona. The purpose of these companies is to purchase and develop real estate within Arizona for resale.

The District Director and Regional Commissioner hold that the beneficiary cannot be classified as an intra-company transferee because he is "an entrepreneur, a speculative investor, and not an employee of an international company." Section 101(a)(15)(L) defines an intra-company transferee as:

An alien who immediately preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or

530

other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge . . .

In the amicus brief submitted by the Association of Immigration and Nationality Lawyers the principle of clear language enforcement of a statute is properly mentioned. When the meaning of the language of a statute is plain, there is no room for a constructed interpretation. *Cominetti* v. *United States*, 242 U.S. 470 (1917). When relying upon the plain language we look first to relevant definitions within the same title that are also used in the same or similar context. In the absence of such definition the every day usage of the terms becomes important.

The Regional Commissioner attempted to establish the everyday usage of a term he thought was relevant to the L-1 statute. How ever "employee" is not used in section 101(a)(15)(L). The term used is "employed." The present tense "employ" is defined in *Webster's New Collegiate Dictionary,* in part, as "to provide with a job that pays wages or a salary." If we were to adopt the definition of "employee" we would exclude some of the very people that the statute intends to benefit: executives. *Webster's* defines "employee" to be "one employed by another usually for wages or salary and in a position below the executive level."

In *Matter of M—,* 8 I&N Dec. 24 (BIA 1958; A.G. 1958), precedent was established which held that the sole stockholder of a corporation was able to be *employed* by that corporation as the corporation has a separate legal entity from its owners or even its sole owner. While that case concerned a visa petition for preference classification, I find its conclusions are equally valid in other areas of concern where an employer/employee relationship needs to be examined by the Service.

The Regional Commissioner found that the requisite relationship exists between Aphrodite Investments and MN&S Corporation. The petitioner's statements established that the beneficiary was employed for the statutory period by Aphrodite Investments in a managerial position for their subsidiary in the United States.

Therefore, the following order will be entered.

ORDER: The nonimmigrant visa petition be approved to accord the beneficiary classification as an intra-company transferee.