**Jose Maria GASTELUM-QUINONES, Appellant,**

v.

**William P. ROGERS, Attorney General of the United States, Appellee.**

**No. 15429.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 27, 1960.

Decided Dec. 8, 1960.

Petition for Rehearing Denied Jan. 9, 1961.

Mr. David Rein, Washington, D. C., with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for appellant.

Mr. Gilbert Zimmerman, Sp. Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON,** DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing appellant's

---

* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.C.

** Judge EDGERTON took no part in the consideration or decision of this case.

[plaintiff's] complaint for review of an order of deportation issued by the Board of Immigration Appeals [Board]. The order complained of was issued pursuant to authority delegated to the Board by the Attorney General under § 241(a) (6) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (6), which reads in pertinent part:

"(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \* \*

"(6) is or at any time has been, after entry, a member of any of the following classes of aliens:

\* \* \* \* \* \*

"(C) Aliens who are members of * * * the Communist Party of the United States * * *."

Appellant, a Mexican national, first entered the United States in 1920 and has resided here since that time. On February 28, 1957, a special inquiry officer of the United States Department of Justice, Immigration and Naturalization Service, after hearing on a rule to show cause issued March 23, 1956, found that, after his aforementioned entry into the United States, appellant was a voluntary member of at least two units of the Communist Party of the United States in Los Angeles, California. At the hearing, although voluntarily placed under oath, appellant, upon advice of counsel, invoked the Fifth Amendment and refused to testify. Appellant was accordingly ordered deported.

On November 14, 1957, the Board, to which appellant had appealed, ordered the appeal dismissed on the basis of the testimony before the special inquiry officer and his findings. The Board, in the appellate proceeding, stated that appellant was represented by able counsel, who was given the widest latitude in conducting his defense. Reviewing the testimony, the Board said:

"Counsel contends the record does not establish that respondent's membership was voluntary. The testimony introduced by the Government reveals that the respondent's membership continued over a period from late 1948 or early 1949 to at least the end of 1950; that for several months, an attempt was made to make the respondent a leading figure in a unit of the Communist Party; that the respondent paid dues over the period of his membership; and attended many meetings closed to all but members of the Communist Party. This testimony establishes a prima facie case of voluntary membership. The respondent made no attempt to rebut this prima facie case. He did not assert that the membership was involuntary. We believe this record establishes that respondent's membership was voluntary."

We think the record amply supports this finding.

About one month later, on December 9, 1957, the Supreme Court rendered its decision in Rowoldt v. Perfetto, 1957, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140. On the basis of that decision and at appellant's request, the Board reopened the case so that, in the Board's words, "[appellant] will be permitted to present such evidence as may be appropriate [to place his case within the framework of Rowoldt]."

All that occurred at the reopened hearing before the special inquiry officer was that appellant's counsel made a statement to the effect that the evidence of record did not establish the "meaningful association" adverted to in Rowoldt, that a *prima facie* case did not exist and, therefore, that it was unnecessary to offer any further evidence. Accordingly, appellant again did not take the stand nor offer any evidence.

After the second and abortive hearing, the special inquiry officer filed his second opinion, calling attention to the fact that appellant had refused to testify during the original hearing, on a claim of privilege, and added:

"Although the respondent's motion requested reopening of the proceedings to offer testimony which he alleged would place him within the framework of Rowoldt, and despite the fact that the Board of Immigration Appeals granted the reopening for said purpose, the respondent failed to testify, to offer any documentary evidence, or to present any witnesses at the reopened hearing."

Calling attention to the fact that, despite the reopened hearing, the sum total of the evidence of record was exactly the same as it was when the decision of February 28, 1957, was entered and that the only new development was the Supreme Court's Rowoldt decision, the special inquiry officer proceeded to compare Rowoldt with the instant case, holding them to be clearly distinguishable, quoting from the decision of the Board in ordering reopening of the case as follows:

"In the instant case, however, the situation is quite different. Neither by testimony at the hearing nor as in Rowoldt's case by statements under oath prior to the hearing has the respondent given information which would challenge the normal inference which would flow from the fact that one who joined a political party, joined knowing that it was a political party. When the respondent registered as an alien in 1940, he stated that he had not belonged to any clubs, organizations or societies (Exhibit 3). When questioned in 1953 prior to hearing, concerning membership in the Communist Party, he refused to answer. During the five hearings which were held from April 13, 1956 to July 9, 1956, he never admitted having been a member of the Communist Party but sat by silently while his counsel attacked the testimony of the witnesses who stated that *he had been a member of the Communist Party*. Quite different then is the situation in the instant case from that in

Rowoldt where unchallenged testimony accepted by the authorities presented a record at the most so balanced that it permitted the inference that Rowoldt's affiliation with the Communist Party may well have been wholly devoid of any political implications. This type of a balanced record is not presented in the instant case. Here we have nothing to prevent the drawing of the normal inferences which flow from the joining of a political party and long association with it. Moreover, Rowoldt joined at a time when it meant to him getting something to eat, something to wear and a place to 'crawl into.' This element tended to place the case in a state of balance for it made questionable the validity of drawing the inference which normally follows from the joining and association with a political party. The respondent's membership on the other hand was at a time when economic conditions did not require the individual to join in mass effort to obtain the simple necessities of life. (See Schleich v. Butterfield, 252 F.2d 191, C.A.6, February 14, 1958)"

The special inquiry officer, therefore, reaffirmed his original findings of fact and conclusions of law and, there being no request for discretionary relief, again ordered deportation. The appeal taken from that order was dismissed by the Board on May 18, 1959, the Board concluding its opinion as follows:

"Both sides are content to rest upon the record. The record establishes membership. We believe it · establishes meaningful membership. Our previous opinion has set forth our reasoning. The appeal will be dismissed."

Thereupon, appellant filed in the District Court his complaint for review of the deportation order, and for declaratory judgment and injunctive relief. On cross motions for summary judgment, the Board's motion for summary judgment was granted, that of appellant was

denied, and the complaint was dismissed. This appeal followed.

Appellant's principal contention is that Rowoldt established a concept of "meaningful association" which requires the Government to show something more than mere membership in the Communist Party before a deportation order can validly be issued. In considering this contention, involving as it does the meaning of a recent Supreme Court decision, a brief study of the development of the present law will be helpful.

■ It is well settled that an alien who is in the United States must be afforded procedural due process before he may be constitutionally deported. Ng Fung Ho v. White, 1921, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, Fong Haw Tan v. Phelan, 1947, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433. Under the Alien Registration Act of 1940, 54 Stat. 670, the pertinent ground for deportation was advocacy of the overthrow of the United States Government by force and violence. This ground was upheld as consistent with due process in Harisiades v. Shaughnessy, 1951, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586. Under the Act of 1940 it was necessary in each deportation case involving membership in the Communist Party to prove that the individual advocated overthrow of the government by force and violence. The position of the Communist Party itself was immaterial.

The Internal Security Act of 1950, 64 Stat. 987, 1006, 1008, 50 U.S.C.A. § 781 et seq., dispensed with the need for proving, in each individual case, that the alien involved advocated overthrow of the government by force and violence, and made Communist Party membership the test. The Supreme Court upheld this lessened burden of proof as constitutional in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911. In Galvan the Court placed great emphasis on a detailed legislative finding, contained in § 2(1) of the Act that:

"[The] Communist movement * * * is a worldwide revolutionary movement whose purpose it is, by treachery, deceit, infiltration into other groups (governmental and otherwise), espionage, sabotage, terrorism, and any other means deemed necessary, to establish a Communist totalitarian dictatorship * * * *" At page 529 of 347 U.S., at page 742 of 74 S.Ct.

The section here involved was then in effect in its present form. The Court held that the word "member" as used in 8 U.S.C.A. § 1251(a) (6) (C), the section involved here, was not limited to those "members" of the Communist Party who are fully cognizant of and who endorse the Party's advocacy of violence.

"It must be concluded * * * *that support, or even demonstrated knowledge, of the Communist Party's advocacy of violence was not intended to be a prerequisite to deportation. It is enough that the alien joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will.*" [Emphasis supplied.] Galvan v. Press, supra, 347 U.S. at page 528, 74 S.Ct. at page 741.

In Galvan the Supreme Court also mentioned that, "Petitioner does not claim that he joined the Party 'accidentally, artificially, or unconsciously in appearance only,' * * *," thus lending inferential support to the Government's view that the burden is on the alien to show that his Party membership was something other than bare organizational membership.

Under the 1940 Act, membership in the Communist Party was not a ground for deportation, but actual personal advocacy of the overthrow of the government by force and violence was. Under the present Act as interpreted by Galvan actual personal advocacy of the overthrow of the government by force and violence is not a prerequisite to deportation; it is enough for the Government to show membership in the Communist Party.

It seems to us that the detailed legislative finding contained in § 2(1) of the 1950 Act and quoted supra makes the latter ground consistent with due process. The legislative finding merely states that the Communist Party as a political organization is devoted to the overthrow of the Government of the United States by force and violence, the ground upheld by Harisiades v. Shaughnessy, supra. The present Act then applies to membership in the organization a presumption of espousal of the doctrines of the organization. Advocacy of the overthrow of the Government by force and violence is attributed to the subject of the deportation proceeding by (1) proof of membership in the Communist Party, (2) the legislative finding of the nature of the Party, and (3) the presumption that a member of a political organization espouses the tenets of the organization.

In Rowoldt the evidence of membership in the Communist Party came from the alien himself who, at the same time, offered an explanation of that membership which, if believed, completely refuted any theory of advocacy of the overthrow of the Government by force and violence. There was no contrary evidence. In that context the Supreme Court spoke of the "meaningful association" required by the statute. We do not think that Rowoldt was in any sense a reversal or limitation of Galvan. Rather, we think that Rowoldt amplified the presumption of support which the statute draws from the bare fact of membership by making that presumption rebuttable.

Therefore we think that the statutory scheme which was upheld in Galvan was only explained and not reversed by Rowoldt and remains in effect. Since the presumption of espousal of the basic tenets of an organization derived from the fact of membership is rebuttable, the burden is on the alien to come forward with an explanation, the Government having made a *prima facie* case by proving voluntary membership. We think that the findings of the Board that appellant's Party membership was meaningful is established by the record, and since appellant here failed to offer any evidence whatsoever, the presumption must stand.

We add that the Board "did not draw any inference from the fact of appellant's silence that his testimony would have been adverse to him if given." Nor have we drawn an inference. Whether such an inference may be drawn we need not, under the circumstances of this case, determine. The judgment of the District Court is

Affirmed.