MATTER OF G—Q—

In DEPORTATION Proceedings

A–5176004

*Decided by Board August 1, 1961*

**Deportability—Communist Party membership—Materiality of personal advocacy or awareness of Party doctrines.**

(1) Ruling in *Galvan* v. *Press*, 347 U.S. 522 (1954), that support or knowledge of Communist Party's advocacy of force and violence was not intended to be prerequisite to deportation remains unimpaired by subsequent judicial decisions. However, inquiry into whether an alien personally advocated violence may be material if it is part of an effort by the alien to show that his membership was accidental, artificial, or unconsciously in appearance only, or within *Rowoldt*.

(2) Respondent's motion to reopen deportation proceedings for purpose of testifying on issue of personal advocacy and belief in Party's doctrines of force and violence is denied where record reflects that respondent refused to testify on claim of privilege at six deportation hearings in 1956, that he offered no testimony or evidence at previous reopening obtained at his instance to allow him to establish he was within *Rowoldt*, and there is uncontradicted testimony to prove that his membership in the Communist Party was both voluntary and meaningful.

DEPORTABLE: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—After entry, member of a section, subsidiary, branch, affiliate, or subdivision of the Communist Party of the United States.

BEFORE THE BOARD

**DISCUSSION:** This is a motion for reopening of proceedings. It follows judicial review affirming the finding of deportability entered by this Board on May 18, 1959. The motion will be denied.

The respondent, a 41-year old male, a native and citizen of Mexico, has been a resident of the United States since 1920. We found he was a member of the Communist Party from about 1948 to at least the end of 1950. At the six deportation hearings held from April 1956 to July 1956, the respondent refused to testify on a claim of privilege. At a hearing reopened on his motion so that he could testify, the respondent offered no evidence on the ground that the Service had failed to make out a case. Reopening is now requested so that the respondent may testify that he did not advocate the

376

overthrow of the Government by force and violence and that he had no knowledge that the Communist Party advocated the overthrow of the Government by force and violence. It is stated that such testimony was not offered previously because it was not known that it was admissible and material.

The Service opposes the motion contending that the respondent has had since 1953 to present the facts and has refused to avail himself of the many opportunities given, including one which was granted to him at his request after deportation had been ordered, and that the offer of proof neither contests the existence of membership nor goes to the question of its meaningfulness. The Service, quoting *Jimenez* v. *Barber*, 252 F.2d 550, contends that the respondent must take the consequences of the course of defense which he pursued and points to the threat which is offered the deportation process if an alien who has been ordered deported and who has secured administrative and judicial review can upset deportation proceedings by asserting his willingness to testify after having refused when he had an opportunity.

The respondent was ordered deported on the basis of his membership in the Communist Party under a statute whose scheme was explained in *Galvan* v. *Press*, 347 U.S. 522, where the Supreme Court, which had been urged to construe the statute "as providing for the deportation only of those aliens who joined the Communist Party fully conscious of its advocacy of violence, and who, by so joining, thereby committed themselves to this violent purpose," ruled that the law "* * * appears to preclude an interpretation which would require proof that an alien had joined the Communist Party with full appreciation of its purposes and program." The Supreme Court stated that "* * * it * * * did not exempt 'innocent' members of the Communist Party." The conclusion of the Supreme Court was "that support, or even demonstrated knowledge, of the Communist Party's advocacy of violence was not intended to be a prerequisite to deportation. It is enough that the alien joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will."

Shortly after the decision in the respondent's case, *Rowoldt* v. *Perfetto*, 355 U.S. 115, was decided. The Service had sought the deportation of Rowoldt who had been a member of the Communist Party for about a year in 1935. Uncontradicted evidence in the record revealed that Rowoldt joined at a time when he had no job and was concerned primarily with obtaining food, clothing and shelter. The Supreme Court held that under the facts presented, Rowoldt's affiliation with the Communist Party may well have been wholly devoid of any political implications and was, therefore, not

"meaningful." After *Rowoldt* was decided, we received a motion from the respondent, couched in similar terms to the present motion, asking for reconsideration of the case (which we denied) and asking for "* * * the right to offer testimony to show that he in fact can place himself within the framework of the rule laid down in *Rowoldt*, which to his knowledge would have been to no avail prior to the decision of the Supreme Court * * *." We reopened the proceedings to give the respondent an opportunity to bring himself within the framework of *Rowoldt*. At the reopened hearing he offered no evidence and refused to testify claiming the Service had failed to make a case.

After the respondent was again found deportable by this Board, he filed a complaint for judicial review. The district court dismissed the complaint. Appeal to the circuit court was dismissed on December 8, 1960 (*Gastelum-Quinones* v. *Rogers*, 286 F.2d 824, C.A. D.C.). This motion was filed almost five months later (May 4, 1961). It is the respondent's belief that the court of appeals, in reviewing the administrative proceedings in his case, ruled that meaningful association is equivalent to advocacy of the overthrow of the Government by force and violence; that the court of appeals believed that the respondent had been given an opportunity to testify with regard to his personal advocacy, although the respondent did not have the opportunity for had he offered to testify on this point the special inquiry officer would have ruled it was not material under *Galvan;* and that the respondent must now be given an opportunity to testify on the issue of belief in force and violence and the Party's advocacy of forceful overthrow.

It requires a far stretch of the imagination to interpret *Gastelum-Quinones* as modifying either *Galvan* or *Rowoldt*, making deportation dependent upon proof that the alien or the Party advocated the forceful overthrow of the Government. The circuit court quoted language from *Galvan* setting forth the rule that personal advocacy of violence was not a prerequisite to deportation, and in its own words stated: "Under the present Act as interpreted by *Galvan* actual personal advocacy of the overthrow of the government by force and violence is not a prerequisite to deportation; it is enough for the Government to show membership in the Communist Party." Bearing in mind that the Supreme Court rejected as a defense Galvan's claim that "he was unaware of the Party's true purposes and program" and bearing in mind the reaffirmation of *Galvan* by the Supreme Court from time to time, it is our belief that an inquiry into whether an alien personally advocated violence is not material in a deportation proceeding unless it is part of an effort by the alien to show that his membership was of a nature described in *Galvan* as accidental, artificial, or unconsciously in appearance only.

In *Gastelum-Quinones* the circuit court speaks of permitting an alien to rebut a presumption of the espousal of the basic tenets of the Communist Party which arises from the mere fact that the alien was a member of the Party. Because of the reliance placed by the circuit court upon *Galvan* and *Rowoldt*, and its own statement of the meaning of *Galvan*, we think that this language concerning the rebutting of the presumption means only that it is proper to show nominal membership as a defense; *i.e.*, as in *Galvan*, membership that is involuntary, accidental, artificial, or unconsciously in appearance only; or as in *Rowoldt*, membership for the purpose of obtaining food and other necessities by one who presumably would just as well have joined the Salvation Army or one of the major political parties if he could thereby have obtained his necessities.

Counsel believes that *Scales* v. *United States*, 260 F.2d 21 (C.A. 4, 1958), requires membership to be more than normal before it can be a ground of deportation. Counsel is of the belief that to be more than a normal member one must have devoted all or a substantial part of his time and efforts to the Party. *Scales* involved the Smith Act under which to obtain a conviction it is necessary to show the existence of active and knowing membership held with the intent of furthering the proscribed purposes of the Party. This is unlike the deportation law which requires the establishment of only voluntary membership in an organization which the alien understood was the political organization known as the Communist Party. In *Scales*, the Supreme Court stated that it had interpreted deportation statutes as requiring "more than the mere voluntary listing of a person's name on Party rolls." *Galvan* is cited as authority. To us, the statement in *Scales* indicates no more than the fact that a person who has been a member is not precluded from explaining that his membership was artificial. In the instant case, there is uncontradicted testimony to show that a voluntary meaningful membership existed.

The respondent has been given an opportunity to show that his membership was nominal. He refused to present evidence on this issue. There is no reason to believe that his membership was nominal. Execution of the deportation order entered upon the administrative proceedings started in March 1956 should not encounter further delay.

ORDER: It is ordered that the motion be and the same is hereby denied.

379